## CIRCUIT COURT FOR THE CITY OF WINCHESTER

Winchester Department
of Social Services

v.

Gregory L. Roberts
and Melissa A. Roberts

February 15, 1992

Case No. (Chancery) 92–26

■■■■■■

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on February 14, 1992, for trial upon the petition of the Winchester Department of Social Services seeking judicial consent for medical treatment pursuant to Virginia Code § 16.1–241(D). This case was heard this morning in the Winchester Juvenile and Domestic Relations District Court and was immediately appealed to this court. Present were the Winchester Department of Social Services by its social worker and its counsel, Jeffrey R. Patton, Esq.; Gregory L. Roberts, the father of the child, with counsel for the parents, Alexander R. Iden, Esq.; and the child, by her guardian *ad litem*, Charles A. Butler, Esq.

Evidence was heard *ore tenus* followed by argument of counsel. Upon consideration whereof, the Court makes the following [findings and conclusions].

### I. *Findings of Fact*

The following facts are found by the greater weight of the evidence.

## 1. *Child*

Dominique Roberts is age two, having been born October 6, 1989. The child is currently at Georgetown University Children's Medical Center, Washington, D.C., because of a ventricular septal defect, which is a hole in the wall between the two lower chambers of the heart, and severe mitral valve regurgitation, which is a massive leak of the valve between the left upper and left lower chambers of the heart. These conditions are congenital defects for which the child has been receiving treatment since birth. It appears that at some point within the recent past that the parents decided to discontinue the child's medication and rely on the power of prayer to cure her condition.

The child's prognosis is guarded, and she cannot be discharged from the hospital without surgery. Dr. John Cockerham, M.D., board certified cardiologist, testified that open heart surgery is required to repair the mitral valve and ventricular septal defect. Without surgery, Dr. Cockerham believes that the child will die within one to two years. When initially presented on January 30, 1992, the child was suffering from congestive heart failure, and her prognosis was poor. However, her condition has improved, and she is now a viable candidate for surgery, which is scheduled for next week. The surgical mortality rate for the proposed surgery is 3 to 4%. While she has improved from her acute condition presented at admission on January 30th, her condition is slowly deteriorating. She is experiencing a progressive loss of left ventricular function, so that if the proposed surgery is not performed within the immediate future, the opportunity to repair the mitral valve will be lost, in which event a heart transplant would then be needed, which is a far riskier medical procedure than the currently recommended surgery.

## 2. *Child's Mother*

Melissa A. Roberts, born January 19, 1960, is the mother of the child. Mrs. Roberts has an eleventh grade education and is presently employed as a cashier at a department store. She married Mr. Roberts in 1987, and they have three children, age two (the child in question), three, and eight. Mrs. Roberts has another child, age 14, by another father. Mr. Roberts reports that his wife joins with him in objecting to the surgery on religious grounds; however, she delivered all three of their children by Caesarean section.

### 3. *Child's Father*

The child's father, Gregory Roberts, was born December 15, 1962. He has a G.E.D. diploma and has attended community college. He is a maintenance supervisor for Walmart and also owns and operates a cleaning service.

Mr. Roberts is a member of the Open Door Church of God of Jesus Christ, which is an apostolic Christian denomination with 560 churches worldwide, and he is the spiritual leader of the family. Elder Anderson, the leader of the local congregation in Winchester to which the Roberts belong, testified that the church does not have any tenet or teaching which prohibits their members from receiving conventional medical treatment or blood transfusions, but rather this decision is left to the judgment of the individual member. He reported that the church has members who are practicing physicians, dentists, and nurses.

Mr. Roberts is not opposed to treatment of the child with prescription medication but objects to the surgery on religious grounds, relying primarily upon his individual interpretation of the teaching of Jesus Christ that "all things are possible to those that believe." Mr. Roberts is sincere in his belief and articulate. He is studying to become an elder in the church. He attributed Dominique's improvement while in the hospital to God. While a member of the church since birth, Mr. Roberts' religious objections to surgical procedures have evolved since Dominique was born with a birth defect. His objections to her surgery appear to derive as much from his natural, parental concern that there is "no guarantee that she will survive the surgery," as from his religious convictions, which appear to be unstructured where medical treatment is concerned.

### 4. *Family Unit*

The Roberts family unit formerly consisted of Mr. and Mrs. Roberts and their three children and Mrs. Roberts' fourteen year old child.

### 5. *The Precipitating Incident*

The Roberts children came into the custody of the Winchester Department of Social Services incident to an emergency removal of the oldest child. Dominique was observed to be ill, was taken to a local pediatrician, and immediately transferred to Georgetown. Mr. Roberts denied that the child was ill prior to the removal and attributed

the child's congestive heart failure to the emotional trauma which she suffered incident to the separation from the parents.

### 6. *Guardian ad litem*

After proper investigation, the guardian *ad litem* has recommended that the proposed surgery be authorized.

## II. *Conclusions of Law*

"[T]he preponderance of the evidence standard is an appropriate standard for an abuse and neglect proceeding . . . ." *Wright v. Dept. of Soc. Servs.*, 9 Va. App. 411, 414, 388 S.E.2d 477 (1990). This is the standard of proof which applies to this proceeding.

When addressing matters concerning a child, the paramount consideration of a trial court is the child's best interest. *See, Toombs v. Lynchburg Div. of Soc. Servs.*, 223 Va. 225, 230, 288, S.E.2d 405 (1982); *Logan v. Fairfax County Dept. of Human Development*, 13 Va. App. 123 (1991). The Court has authority to authorize the surgery under either Virginia Code § 16.1–241(D) or 54.1–2969. The child is suffering from a condition from which death is imminent within the next one to two years, and the opportunity to perform the mitral valve surgery may be lost if not performed within the immediate future. The child cannot be released from the hospital without surgical intervention. The best interests of the child are served in this case by authorizing the surgery and vesting temporary custody of the child in the Department of Social Services.

The child is a neglected child within the meaning of Virginia Code § 16.1–228, which states, in pertinent part:

> "Abused or neglected child" means any child . . . [w]hose parents . . . neglects or refuses to provide care necessary for his health; however, no child who in good faith is under treatment solely by spiritual means through prayer in accordance with the tenets and practices of a recognized church or religious denomination shall for that reason alone be considered an abused or neglected child . . . .

With respect to medical decisions, the parents are generally the surrogate decision makers for their child, in which capacity the parents are required to act in the child's best interest, which is a polestar of Virginia law which underpins the child neglect and abuse statutes. While a mentally competent adult has the right to refuse medical

treatment, *see, Cruzan v. Director, Missouri Dept. of Health*, — U.S. —, 110 S. Ct. 2841, 111 L. Ed. 2d 224 (1990), and Virginia Code §§ 54.1–325.8 and 37.1-134.4, even this right is not absolute and must be balanced against the societal objectives of preserving human life and protecting third parties. Adult patients have been denied the right to refuse treatment for contagious diseases. *Jacobson v. Massachusetts*, 197 U.S. 11, 49 L. Ed. 643 (1905).

Virginia has been in the forefront in protecting freedom of religion. The Virginia Statute for Religious Freedom, Virginia Code § 57–1 was enacted in 1785 and was a precursor of the First Amendment. Virginia Code Section 16.1–228 recognizes that the religious convictions of the parents may conflict with the best interests of the child and must be considered by the court in cases such as the present one. However, as noted by the Court of Appeals for the District of Columbia, *Application of President of Georgetown College*, 331 F.2d 1000, 1007–1008 (D.C. 1964), *cert. denied* 377 U.S. 978:

> It has been firmly established that the courts can order compulsory medical treatment of children for any serious illness or injury . . . . [cites omitted]. And there are no religious exemptions from these orders . . . . [cites omitted]. These principles were stated by the Supreme Court in *Prince v. Massachusetts*, 321 U.S. 158, 166-167, 64 S. Ct. 438, 442, 88 L. Ed. 645 (1944):
>
> > Acting to guard the general interest in youth's well being, the state as *parens patriae* may restrict the parent's control . . . . Its authority is not nullified merely because the parent grounds his claim to control the child's course of action on religion or conscience . . . . The right to practice religion freely does not include liberty to expose . . . the child . . . to ill health or death.

The Supreme Court of the United States in *Prince* further stated: "Parents may be free to become martyrs themselves. But it does not follow that they are free . . . to make martyrs of their children before they have reached the age of full and legal discretion when they can make that choice for themselves." *Prince v. Massachusetts*, 88 L. Ed. at 654.

The proposed surgery provides an opportunity for life and improved health for Dominique, and the state's interest in preserving her life overrides the parents' religious objections. Emergencies de-

rive from a combination of circumstances and a lack of planning. The child's condition is dire, and the prospect of a medical emergency developing is imminent.

The proposed surgery is authorized. Returning the child to the custody of her parents at this time would be contrary to her welfare, and temporary custody of the child shall be with the Department of Social Services until they determine that it is medically reasonable to return the child to the custody of her parents.

### III. *Decision*

In accordance with Virginia Code §§ 16.1–278.2, 16.1–241(D) and 54.1–2969 of the Code of Virginia, the proper disposition of this case is as follows:

### 1. *Care, Custody and Control*

The care, custody and control of Dominique Roberts is awarded to the Winchester Department of Social Services until such time as the medical condition of the child improves to the point that she can safety be returned to the custody of the parents. If it becomes applicable, the Department shall file foster care plans concerning said child according to the applicable statute. The parents shall be allowed liberal visitation with the child.

### 2. *Authorization for Medical Treatment*

The appropriate medical personnel at Georgetown University Medical Center and medical facilities to which she may be referred are authorized to administer medications and to perform any and all necessary procedures and treatment incident to the surgical closure of the ventricular septal defect and the repair or replacement of the leaking mitral valve of Dominique Roberts and to perform all additional medical procedures necessary to promote the full recovery of this child, including aftercare.

### 3. *Access to Records and Privileged Information*

Any social workers participating in this case, attorneys for the parties, and guardians ad litem shall have complete access to the records and files of any health care provider who has provided services to the child or to any party in this case, to include employment, medical and educational records of the parents. This right of access shall include the right to examine such records, make copies of same, and to discuss the child or the parties. A copy of this order shall be

sufficient authorization for the release of such information under any privacy act. This right of access shall expire one year from the date of entry of this order.

### 4. *Costs*

Pursuant to Va. Code Ann. §§ 16.1–266, 16.1–267, and 19.2-163, the following are assessed as costs to be paid by the Commonwealth in this proceeding:

A. Fees of the guardian *ad litem.*

B. Court appointed counsel fees, if applicable.

C. Court appointed counsel and the guardian *ad litem* are directed to file petitions for awards of fees and expenses with the court.

### 5. *Transfer to Juvenile Court*

This mater is hereby transferred to the Winchester Juvenile and Domestic Relations District Court for all matters in the future pertaining to the infant child, Dominique Roberts, as the circumstances may require. Pursuant to Virginia Code § 16.1–298, if this case is appealed, this order will remain in effect until this case is resolved on appeal.

### 6. *Final Order*

This order is a final order, and the clerk is directed to place this case among those ended. The Clerk is directed to send a copy of this Decree to counsel for the parties, who shall file such objections hereto as deemed advisable.