COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Annunziata and Overton


JOHN ANGE, SANDRA ANGE, MICHAEL ANGE,
 KAREN ANGE AND BARBARA WILLIAMS[1]

                                    MEMORANDUM OPINION[*]
v.   Record No. 0676-97-1              PER CURIAM
                                     FEBRUARY 3, 1998
CHESAPEAKE DEPARTMENT OF
 HUMAN SERVICES


          FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                    E. Preston Grissom, Judge

            (Peter J. Jankell, on brief), for appellant
            John Ange.

            (John Oliver, Deputy City Attorney, on
            brief), for appellee.


     John Ange appeals the decision of the circuit court

terminating his parental rights to his daughter.  Ange contends

that the trial court erred by failing to consider, or by

considering and rejecting, certain specific members of his family

as alternative placements for his daughter as required under Code

§ 16.1-283(A).  Upon reviewing the record and briefs of the

parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.

 See Rule 5A:27.

────────────────────

     [1]All appellants noted an appeal of the trial court's March 4,
1997 order.  However, as only John Ange pursued the appeal by
filing a brief, this opinion addresses only those issues raised in
his brief.

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Development, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

> "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." The trial court's judgment, "when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it."

Id. (citations omitted).

The Chesapeake Department of Human Services (the Department) presented evidence that Ange's daughter was taken into protective custody in February 1992 when she was three years old and was found wandering the street unattended. Further investigation disclosed that the child was staying with her paternal grandmother, Barbara Williams, in a home that lacked electricity or water and had blankets and boards on the door and many of the windows. The child was developmentally delayed, having almost no intelligible speech nor the ability to use a fork. The child was diagnosed as suffering from post-traumatic stress disorder arising from the neglect she suffered before coming into foster care.

Ange acknowledged that he was unable to care for his daughter without assistance.[2] He contends, however, that the

_____

[2]The mother's parental rights also were terminated, and she

2

Department failed to fulfill its statutory obligation to investigate possible placement with his family members, specifically his mother, Barbara Williams, or two of his sisters, Tanya Davis and Barbara Tobias.

> Code § 16.1-283(A) provides in pertinent part as follows:
> Any order terminating residual parental rights shall be accompanied by an order continuing or granting custody to a local board of public welfare or social services . . . or the granting of custody or guardianship to a relative or other interested individual. However, in such cases the court shall give consideration to granting custody to relatives of the child, including grandparents.

This provision requires that
> before the court grants custody of a child, under the provisions of Code § 16.1-283(A) the Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options.

Logan, 13 Va. App. at 131, 409 S.E.2d at 464.

The evidence produced by the Department at trial demonstrated that it investigated whether there were any relatives willing and suitable for possible placement of the child. In fact, the record includes an order dated February 8, 1995, specifically requiring updated home studies of Williams and Davis to assist the court in making its custody determination.

---

did not appeal that ruling.

3

The Department conducted or attempted home studies, psychological interviews, and additional evaluations. The court found that neither the grandmother, Barbara Williams, nor the aunt, Tanya Davis, offered beneficial alternatives. Among other factors, the evidence demonstrated that neither Williams nor Davis was willing to work with the Department.

Williams had physical custody of the child when she was first brought into foster care and was found to be partially responsible for the child's neglect. Williams subsequently refused to tell the Department where she was living and threatened the child's foster mother.

Davis failed to safeguard the child prior to her foster care placement, despite being in a position to protect the child. Davis gave conflicting information concerning the extent of her relationship with, and financial reliance upon, her estranged husband. Evidence, including court records of prior proceedings, demonstrated a history of domestic abuse between Davis and her estranged husband. Moreover, prior to the presentation of evidence at the final disposition hearing in November 1996, Davis withdrew her petition for custody, indicating that she no longer desired custody.

At the November 1996 hearing, Ange raised for the first time the possibility of placing the child with his sister, Barbara Tobias. The record indicates that Ange never disclosed Tobias' whereabouts prior to the hearing. Ange testified that Tobias

became a possible placement only after Davis withdrew her petition. However, the evidence showed that in 1987 Tobias abducted her children from their father's custody and, with the help of Williams, hid them for a period of weeks by moving them from hotel to hotel.

According to the testimony of clinical psychologist Dr. Brian Wald, neither Williams nor Davis had the emotional resources to handle stress caused by the child's placement with them, or to provide the care needed by the child. Davis had a negative sense of self and was less sensitive to the needs of others, in part due to a lack of social maturity. Williams also was socially immature, was focused on herself, and was emotionally needy. Neither woman ever acknowledged that the child had been at risk at the time she was taken into foster care.

The evidence demonstrated that the child's best interests would not be served by placement with her paternal relatives. In foster care, the child had progressed to the point where she no longer needed special education. When placed in the care of these relatives prior to her removal, the child was, at a minimum, poorly supervised. The evidence also showed that the child suffered an emotional and psychological relapse following her temporary placement in Davis' home in June 1994. In fact, the child suffered parental alienation syndrome resulting from Davis' attempts to turn the child against her foster parents.

The child was emotionally fragile. Both Dr. Wald and Raymond McCoy, a licensed clinical social worker, opined that removing the child from her foster home could result in her regression and mental decompensation to the point of psychosis.

While social worker Valerie Rowles found Davis' home to be appropriate for the child's placement, Rowles acknowledged that she did not know the extent of the domestic abuse Davis had suffered at the hands of her estranged husband. The trial court was entitled to weigh Rowles' recommendations in light of the other evidence presented at the hearing.

The trial court found that the Department had proven, by clear and convincing evidence, the elements of Code § 16.1-283(C)(1) and (2). That finding is not plainly wrong and is supported by the evidence. The evidence also demonstrated conclusively that the Department actively considered, interviewed, and evaluated possible placement with family members, as required by Code § 16.1-283(A). We find no error in the trial court's decision not to place the child with father's relatives.

Accordingly, the decision of the circuit court is summarily affirmed.

Affirmed.