COURT OF APPEALS OF VIRGINIA


Present:  Judge Annunziata, Senior Judge Duff and Judge Clements[*]
Argued at Alexandria, Virginia


SHOHREH GHASEM

v.    Record No. 2537-99-4

FAIRFAX COUNTY DEPARTMENT OF
 FAMILY SERVICES

MEMORANDUM OPINION[**] BY
JUDGE CHARLES H. DUFF
MAY 9, 2000


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Arthur B. Vieregg, Jr., Judge

(Charles J. Swedish, on brief), for
appellant.  Appellant submitting on brief.

Thomas P. Sotelo, Substitute Assistant County
Attorney (Keegan & Sotelo, PLC, on brief),
for appellee.

(W. Kip Wood, on brief), Guardian ad litem
for Saman Ghasem, an infant.


     Shohreh Ghasem ("appellant") appeals the decision terminating

her parental rights to Saman Ghasem ("Saman").  The issue on

appeal is whether the evidence was sufficient to meet the clear

and convincing standard required for termination of parental

rights under Code § 16.1-283(C)(2).  We find that the evidence was

sufficient and affirm the trial judge's ruling.

---

[*] Judge Jean Harrison Clements took part in the
consideration of this case by designation pursuant to Code
§ 17.1-400, recodifying Code § 17-116.01.

[**] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

FACTS

Saman was born on December 11, 1989. In September of 1995, the Fairfax County Department of Family Services ("the Department") removed Saman, then four years old, from appellant's care because appellant left Saman unsupervised and locked out of their hotel room for seven hours. Saman was returned to appellant's care, but removed again on July 29, 1996 because appellant violated a preliminary protective order which prohibited her having contact with a friend who had physically abused appellant's other son. The Department later returned Saman to appellant.

On December 11, 1997, appellant signed a service agreement with the Department stating Saman would not be left alone or unsupervised at any time or for any reason. The Department explained to appellant that Saman suffered from mild mental retardation and had special needs. Appellant's therapist also explained the agreement to her. On that same day, a social worker for the Department telephoned the Ghasem home and found Saman was there alone. The Department removed him from appellant's care again on December 11, 1997.

Appellant signed additional service agreements with the Department on December 24, 1997, and January 9, 1998, stating she would not leave Saman alone or unsupervised for any amount of time or for any reason. Since 1995, the Department provided the family with various services, interventions and financial assistance,

-

including: protective supervision of Saman and his brother; coordination with the mental health center and Multicultural Clinical Center for individual and home based therapy; and coordination with Saman's school and health clinics. The Center for Multicultural Human Services had worked with the family "intensively" since April of 1997, providing individual therapy, parental education, nutritional education, and social skills training for appellant two times per week. Despite the repeated attempts to educate appellant concerning Saman's special needs, and despite attending parenting classes, appellant continued to deny Saman had any problems. Evidence was presented that appellant suffers from depression and a brain dysfunction.

Appellant again left Saman alone for about one hour and fifteen minutes on January 29, 1998 when she was late returning from a doctor's appointment. The Department removed Saman from her care and initiated proceedings to terminate her residual parental rights to Saman.

On July 28, 1999, a hearing was held in circuit court concerning the termination of appellant's parental rights. At the hearing, the deposition of Dr. Ronald Federici, a clinical neuropsychologist, was admitted into evidence. Dr. Federici conducted a comprehensive neuropsychological evaluation of Saman dated January 21, 1999. He testified Saman, who at the time of the evaluation was nine years old, suffers from profound cognitive and learning disabilities, speech, language and hearing

-

deficiencies, mild mental retardation, brain dysfunction and various mental and emotional disorders. He is physically small for his age, and his mental development is equivalent to that of a five year old. Saman also suffers from a reactive attachment disorder and fear of abandonment. Dr. Federici stated that Saman will likely require adult supervision and a controlled environment into adulthood. Saman's prospect for future development is very poor. Dr. Federici further opined that if Saman is to reach his developmental potential, he requires a parental figure with significant dedication and intelligence to address his needs.

On September 27, 1999, the trial judge entered an order terminating appellant's residual parental rights. The trial judge found that it was in the best interest of Saman to "live in a controlled environment with adults who understand and can meet his special needs." He also found the Department clearly and convincingly proved the requirements of Code § 16.1-283(C)(2), stating that, despite attending parenting classes and receiving a "host of other services," appellant's "inherent disabilities demonstrate that she is unable to remedy the conditions which led to Saman's placement in foster care." Appellant appeals that order.

### ANALYSIS

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests."

-

Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128,
409 S.E.2d 460, 463 (1991).  Where the trial judge hears the
evidence ore tenus, his decision is entitled to great weight and
will not be disturbed on appeal unless plainly wrong or without
evidence to support it.  See Lowe v. Dep't of Pub. Welfare, 231
Va. 277, 282, 343 S.E.2d 70, 73 (1986).

Code § 16.1-283(C)(2) provides that the parental rights of a
child placed in foster care may be terminated if the court finds
by clear and convincing evidence that it is in the best interests
of the child and that

> [t]he parent . . ., without good cause,
> [has] been unwilling or unable within a
> reasonable period of time not to exceed
> twelve months from the date the child was
> placed in foster care to remedy
> substantially the conditions which led to or
> required continuation of the child's foster
> care placement, notwithstanding the
> reasonable and appropriate efforts of
> social, medical, mental health or other
> rehabilitative agencies to such end.  Proof
> that the parent . . . without good cause,
> [has] failed or been unable to make
> substantial progress towards elimination of
> the conditions which led to or required
> continuation of the child's foster care
> placement in accordance with [the parent's]
> obligations under and within the time limits
> or goals set forth in a foster care plan
> filed with the court . . . shall constitute
> prima facie evidence of this condition.

"'[T]he rights of parents may not be lightly severed but are
to be respected if at all consonant with the best interests of the
child.'"  Ward v. Faw, 219 Va. 1120, 1124, 253 S.E.2d 658, 661
(1979) (citation omitted).  The termination of parental rights is

-

a grave, drastic, and irreversible action. "When a court orders termination of parental rights, the ties between the parent and child are severed forever and the parent becomes 'a legal stranger to the child.'" Lowe, 231 Va. at 280, 343 S.E.2d at 72 (citation omitted).

Appellant contends that she was first diagnosed as mildly mentally retarded after Saman was removed from her home on January 29, 1998. She asserts that this condition led to the child's foster care placement and that, after January 29, 1998, the Department has offered her no services in an effort to remedy this condition or any other condition which led to Saman's foster care placement. However, the record indicates that appellant's psychological condition had been an issue throughout the Department's period of involvement with the family, not just on or after January 29, 1998. Moreover, appellant's diagnosis of mild mental retardation was not the sole condition which led to Saman's placement in a foster home. The evidence proved that Saman had numerous physical, mental, and emotional special needs that were not being met under appellant's care. Furthermore, appellant repeatedly left the child alone and unsupervised despite the Department's continuing attempts to advise her of his special needs.

In addition, the Department worked with the family and offered numerous counseling and medical services to the family since 1995, but noted little progress or improvement in

-

appellant's parenting skills.  For example, appellant received a psychological examination in January 1997, parental/child interaction assessments in March 1997 and February 1998, and parenting classes.  The December 14, 1998 Foster Care Service Plan states that appellant received psychiatric medication from October 1995 to December 14, 1998.  The plan also states that despite "intensive services and interventions" appellant did not make "much progress and continually engages in the behavior that resulted in Saman going into the custody of the Department in September 1995."

In addition, appellant received a neuropsychological evaluation in February 1998.  The Foster Care Service Plan dated March 3, 1998 indicates that appellant was diagnosed as suffering from "an emotional condition" and "brain dysfunction."  Her emotional development was diagnosed as that of a child and characteristic of Borderline Personality Disorder.  The report further stated she "displays significant cognitive weaknesses which represent impairment of several brain areas which are generally impervious to change."  At the time of the report, and as stated above, appellant had received "intensive home-based services" for over two years, but she continued to leave Saman unsupervised, and she continued to deny that he had any special developmental, cognitive, mental or physical needs or problems.

Thus, the record indicates that the Department was aware from the time it first became involved with the family that appellant's

mental health status was an issue in the matter. Moreover, the Department was also aware of and concerned for the mental, physical, and emotional well being of Saman, a child with numerous special needs. The record is replete with instances of "reasonable and appropriate efforts" made by the Department and other agencies over a period of several years in an attempt to work with appellant and remedy the numerous conditions which led to the foster care placement of Saman. However, the record also indicates that appellant made very little, if any, progress in remedying these conditions, notwithstanding the efforts of the Department and other agencies.

Therefore, the record supports the trial judge's finding that the termination of appellant's residual parental rights was in Saman's best interest and his finding that the Department presented clear and convincing evidence to meet the requirements of Code § 16.1-283(C)(2). Accordingly, we affirm the decision.[1]

<u>Affirmed.</u>

---

[1] Because we decide the evidence was sufficient to support the trial judge's holding, the point raised by appellee regarding Code § 16.1-283(B) is moot.

-