## Alexandria

## LOTTIE M. LOGAN

v.

## FAIRFAX COUNTY DEPARTMENT OF HUMAN DEVELOPMENT, et al.

No. 1210-90-4

Decided September 17, 1991

COUNSEL

Deborah A. Wilson, for appellant.

Kyle Elizabeth Skopic, Assistant County Attorney (David T. Stitt, Fairfax County Attorney; Robert Lyndon Howell, Deputy County Attorney, on brief), for appellee, Fairfax County Department of Human Development.

*Guardian Ad Litem*: James E. Wilcox, Jr. (Clayton, Wilcox & Vergara, on brief), for appellee, Michael Logan.

OPINION

**KOONTZ, C.J.**—Lottie M. Logan appeals the July 18, 1990 order of the Family Court of Fairfax County terminating her residual parental rights with respect to her son, Michael Logan, pursuant to Code § 16.1-283.[1] In addition to finding sufficient evidence to terminate Ms. Logan's residual parental rights, the family court approved a foster care service plan documenting adoption as being in Michael's best interest, while continuing Michael's custody with the Fairfax County Department of Human Development (Department). Ms. Logan asserts the court erred (1) by terminating her residual parental rights pursuant to Code § 16.1-283, (2) by granting custody of Michael to the Department rather than to his maternal grandmother, and (3) by considering evidence of the Department's contacts with Ms. Logan regarding her other children. We find these assertions without merit, and affirm the decision of the family court.

## I.  Factual Background

On January 26, 1986, Ms. Logan, a twenty-six year old divorcee with a ninth grade education, gave birth to her third child, Michael, who was subsequently diagnosed as suffering from cerebral palsy. Michael is unable to feed or bathe himself, or to ambulate. Though he is capable of communicating to a certain degree, he only speaks three or four words which are unintelligible except by those people who know him. Consequently, Michael requires extraordinary care and supervision.

In August 1986, the Department became involved with Michael as a result of concerns over Michael's medical care and possible neglect by Ms. Logan. In March 1987, the Department intervened on Michael's behalf after receiving reports that Ms. Logan had repeatedly failed to obtain the necessary and available medical and physical therapy services for Michael. As a result of that intervention, the court ordered Ms. Logan to undergo a mental health evaluation and to take Michael to his medical appointments at the hospital. Ms. Logan was subsequently evaluated by Mount Vernon Center for Community Mental Health as suffering

---

[1] The trial court also terminated the residual parental rights of Ms. Logan's husband, Kevin Logan, in addition to the rights of William Jones, Michael Logan's putative father, and any other interested persons, none of whom have appealed the termination of their rights.

from "a personality disorder which is defined as inflexible and maladaptive personality traits that cause significant impairment in social and role functioning." The evaluation noted that, while supportive individual sessions would be useful for Ms. Logan, she displayed little motivation for treatment and her motivation was the critical factor in ensuring improvement in her children's situation.

On June 19, 1987, the court determined Michael was a neglected child within the meaning of Code § 16.1-241(A)(1) and ordered Ms. Logan to transport Michael to all medical appointments necessary to ensure his health and to take him to all scheduled therapy appointments. The court further ordered Ms. Logan to comply with any treatment or services recommended by the Department. After Ms. Logan failed to abide by the order, Michael was placed in the Department's custody by order of the court on September 10, 1987.

In November 1987, the Department filed a foster care service plan with the stated goal of returning Michael to Ms. Logan by September 1988. In order to achieve that goal, Ms. Logan was directed to visit Michael on a weekly basis, attend parenting skills classes, and to cooperate with the Linking Infant Needs with Community Services Program (LINCS), the Department and the Community Base Services worker. In the interim, Michael was placed with foster parents who were directed to take Michael to his therapy appointments and to visit his mother at the Department on a weekly basis.

Despite the stated goal of the foster care service plan, Michael was not returned to Ms. Logan by September 1988. Instead, the foster care service plan was modified to provide for Michael's return to his mother by September 1989. In its January 12, 1989 review of the service plan, the Department stated the reason for the modification of the service plan was Ms. Logan's "lack of participation in [Michael's] physical and occupational therapy, and her lack of understanding of her need to be trained in those areas." The Department noted that, though the various agencies involved with Michael and Ms. Logan offered her consistent and regular visitation with Michael either at the Department, her home, or during therapy sessions, she only took advantage of approximately ten percent of the offered time. Finally, the Department stated in its review that if Ms. Logan failed to participate fully in the services offered, then the service plan goal would be

modified so that Michael would not be returned to her.

Approximately one year after presenting its review of Michael's foster care service plan and warning Ms. Logan of her need to adhere to the plan, the Department filed a petition to terminate Ms. Logan's residual parental rights to Michael and to give the Department the right to place Michael for adoption. The Department stated in its revised Foster Care Service Plan that "[t]here are no known relatives appropriate or interested in caring for Michael at this time," and concluded that terminating Ms. Logan's residual parental rights would be in Michael's best interest so that he could be placed for adoption. The court conducted a hearing concerning the petition on July 18, 1990. The evidence showed Ms. Logan had consistently failed to maintain regular contact with Michael throughout the implementation of the foster care service plan. Though she occasionally visited Michael, Ms. Logan commonly missed scheduled visits or arrived at them late. Further, Ms. Logan failed to visit Michael from June 1989 to March 1990 after being warned that such failure would result in the termination of her parental rights. The court also heard testimony that in three years, Ms. Logan only attended one of Michael's medical appointments, and that she did not attend any school conferences or occupational and physical therapy sessions for Michael. Only after being warned of the termination proceeding did Ms. Logan attend any parenting skills training classes required by the Department. In addition, testimony was admitted that indicated the Department was involved with Ms. Logan in the past when she failed to enroll her other two children in school. Finally, the court heard evidence that Ms. Logan's residence and whereabouts were frequently unknown by the Department.

During the hearing, Ms. Logan testified that her mother, Mrs. Formando, who also was present, was previously an approved Fairfax County foster parent and that the Department never asked her mother to take custody of Michael. She also claimed her mother and sister could assist her in caring for Michael. The court was informed that Mrs. Formando is forty-four years old and lives with her seventy-five year old husband in a three bedroom trailer home. In addition, Ms. Logan's twenty-seven year old sister, Donna Stanley, was living in the trailer and was seeking to regain custody of her own three children from foster care in order to have them reside with her in the trailer. However, Mrs.

Formando was never called to testify and never expressed to the court a desire to gain custody of Michael.

## II. Legal Issues

On appeal, Ms. Logan argues that the court erroneously terminated her residual parental rights pursuant to Code § 16.1-283 because the Department did not prove by clear and convincing evidence that it provided her with psychological services to assist her in preserving her relationship with Michael. We disagree and uphold the trial court's finding by clear and convincing evidence that both the requirements of Code § 16.1-283(B)(1) and (2), and the requirements of § 16.1-283(C)(1) and (2) were met.

When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests. *See Toombs v. Lynchburg Div. of Soc. Servs.*, 223 Va. 225, 230, 288 S.E.2d 405, 407-08 (1982); *Farley v. Farley*, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." *Farley*, 9 Va. App. at 329, 387 S.E.2d at 796 (citing *Brown v. Brown*, 218 Va. 196, 200, 237 S.E.2d 89, 92 (1977)). Furthermore, the evidence is viewed in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom. *Farley*, 9 Va. App. at 328, 387 S.E.2d at 795. "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Id.*; *accord Eichelberger v. Eichelberger*, 2 Va. App. 409, 412, 345 S.E.2d 10, 11 (1986). The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Peple v. Peple*, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

Pursuant to § 16.1-283(B), the court may terminate the residual rights of a parent of a child who has been neglected and placed in foster care based upon clear and convincing evidence that it is in the child's best interest, and that (1) "[t]he neglect . . . suffered by [the] child presented a serious and substantial threat to his life, health or development," Code § 16.1-283(B)(1), and that (2) "[i]t is not reasonably likely that the conditions

which resulted in such neglect . . . can be substantially corrected or eliminated so as to allow the child's safe return to his parent . . . within a reasonable period of time." Code § 16.1-283(B)(2). Section 16.1-283(B)(2)(c) provides that prima facie evidence of the conditions set forth in subsection (B)(2) exists when there is proof that the parent, "without good cause, [has] not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to . . . prevent the neglect . . . of the child."

There is no dispute that Ms. Logan's neglect of Michael's needs presented a serious threat to his welfare. Thus, the issue is whether sufficient evidence supports the court's finding that it is reasonably unlikely the conditions leading to Michael's neglect could be substantially corrected within a reasonable period of time. Here, the record is replete with instances where Ms. Logan failed to respond to the Department's efforts to assist her and Michael in an attempt to prevent her neglect of Michael. These instances include Ms. Logan's repeated failure to attend her scheduled visits with Michael and to take Michael to his medical appointments. However, Ms. Logan now contends she had good cause for her failure based on the fact that she did not receive psychological therapy.

■ Admittedly, the Department might have offered Ms. Logan psychological therapy to assist her with her personality deficiencies as outlined in her court ordered psychological evaluation. Nonetheless, the trial court properly found that based on the totality of the circumstances Ms. Logan's failure to respond to the Department's efforts to remedy her neglect of Michael was without good cause. The evidence supports the Department's determination that Ms. Logan's lack of motivation was the greatest obstacle to remedying the problem. Ms. Logan consistently failed or refused to take advantage of all services offered to her. She was generally unmotivated to make even the slightest efforts to visit Michael or to keep track of his status. Under these circumstances, we find it was reasonable for the Department not to have offered Ms. Logan additional services for her personality problems. The facts allowed the trial court to find that an offer of psychological services to Ms. Logan would have been futile and, therefore, unnecessary since she had not utilized any of the other services of-

fered her. The Department is not required "to force its services upon an unwilling or disinterested parent." *Barkey v. Commonwealth*, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986) (citing *Harris v. Lynchburg Div. of Soc. Servs.*, 223 Va. 235, 243, 288 S.E.2d 410, 415 (1982)). If Ms. Logan had displayed any interest or desire to engage in psychological therapy or any of the offered services, the Department might have been required to offer her psychological services in order to establish that her failure to respond to the Department's rehabilitative efforts was without good cause. Such is not the case here.

Pursuant to Code § 16.1-283(C), the court may terminate the residual parental rights of a parent of a child placed in foster care as a result of court commitment, based upon clear and convincing evidence that it is in the child's best interest and that (1) the parent has, "without good cause, failed to maintain contact with . . . the child for a period of twelve months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies . . . to strengthen the parent-child relationship," Code § 16.1-283(C)(1), or (2) the parent "without good cause, [has] been unwilling or unable within a reasonable period not to exceed twelve months to remedy substantially the conditions which led to the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end." Code § 16.1-283(C)(2). Section 16.1-283(C)(3) provides that prima facie evidence of the conditions set forth in subsections (C)(1) or (2) may be established by proof that the parent, without good cause, has failed either "to communicate on a continuing or planned basis with the child for a period of twelve months" or "to make reasonable progress towards the elimination of the conditions which led to the child's foster care placement in accordance with [the parent's] obligations under and within the time limits or goals set forth in a foster care plan." Code § 16.1-283(C)(3)(b).

Again, the record demonstrates Ms. Logan failed to communicate with Michael on a continuing or planned basis. Evidence established that she failed to make reasonable progress toward the elimination of the conditions leading to Michael's placement in foster care. Ms. Logan's failures were without good cause. The Department was not required to offer her psychological services

for the same reasons as previously stated. Therefore, we cannot say the trial court's decision to terminate Ms. Logan's residual parental rights pursuant to Code § 16.1-283 was plainly wrong or without evidence to support it.

Ms. Logan argues that the court erred by granting custody of Michael to the Department rather than her mother, Mrs. Formando. In response, the Department contends Ms. Logan lacks standing to raise this issue since her residual parental rights have been terminated. We disagree. Code § 16.1-283(A) states that "[a]ny order terminating residual parental rights shall be accompanied by an order continuing or granting custody" of the child. Thus, Michael's placement was a part of the process terminating Ms. Logan's parental rights, not a separate proceeding. While Ms. Logan may lose standing to contest future matters relating to Michael after her residual parental rights have been terminated, she has standing to contest any portion of the process terminating her rights, including Michael's placement with the Department.

■ Recognizing Ms. Logan has standing to challenge the appropriateness of Michael's placement with the Department, we must decide whether the court erred in failing to grant custody of Michael to her mother in contradiction to the mandate of Code § 16.1-283(A), which states "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Ms. Logan contends Code § 16.1-283(A) mandates that the court carefully undertake a deliberate evaluation of the comparative merits of a child's placement with relatives over a placement with a third party, rather than merely making a casual inquiry into the matter. The Department and Michael's guardian ad litem both adopt the position that Ms. Logan had the duty to request the court to grant custody of Michael to Mrs. Formando and to present evidence warranting such a decision. We reject the position of the Department and the guardian ad litem, but we find it unnecessary to fully address the issue raised by Ms. Logan. We believe that before the court grants custody of a child, under the provisions of Code § 16.1-283(A) the Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options. However, in the present case, we need not define the degree and extent of that duty to locate and evalu-

ate relatives since the record demonstrates the court was able to properly decide not to grant custody of Michael to Mrs. Formando based on its observations and the facts before it.

The record shows Mrs. Formando was present during the hearing. Despite being present while the court was determining who should receive custody of Michael, Mrs. Formando never said a word to the court or in any way indicated she was even slightly interested in receiving custody of Michael. Though the court did not ask Mrs. Formando if she desired custody of Michael, it did inquire into Mrs. Formando's personal situation and living status. From Ms. Logan's testimony, the court learned Mrs. Formando lived close to Ms. Logan in a three bedroom trailer with her seventy-five year old husband and her twenty-seven year old daughter, who was seeking to regain custody of her own three children so they also could live in the trailer. Based on this evidence, the court reasonably and properly could have found that Mrs. Formando was disinterested in accepting custody of Michael, if not unwilling to do so. Thus, we find the court gave adequate consideration to granting Mrs. Formando custody of Michael as required by Code § 16.1-283(A), and properly granted custody of Michael to the Department.

█ Finally, Ms. Logan argues the court erred by considering evidence of her involvement with social services regarding her other two children. Specifically, Ms. Logan contends this evidence is irrelevant to the determination of whether her residual parental rights to Michael should be terminated. In the alternative, she contends the probative value of the evidence is outweighed by its prejudicial effect. We disagree on both counts. "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Blain v. Commonwealth*, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). Likewise, a court's determination and weighing of the probative value of evidence "rests *largely* with the trial court and will be reviewed only for an abuse of discretion." *Lewis v. Commonwealth*, 8 Va. App. 574, 579, 383 S.E.2d 736, 740 (1989)(emphasis in original). Here, the court heard evidence that Ms. Logan previously had neglected to enroll her other children in school. Clearly, Ms. Logan's record of neglect with regard to her children is relevant to her ability to care properly for Michael. Her neglect of her other children demonstrates she has a

pattern of neglect, which is of definite probative value when coupled with her unwillingness to correct her deficiencies in her care of Michael. Mindful of the court's primary goal of ensuring Michael's best interest, we cannot say the court abused its discretion by considering evidence of Ms. Logan's neglect of her other children.

For the foregoing reasons, we affirm the court's decision to terminate Ms. Logan's residual parental rights to Michael. We also affirm the court's decision to grant the Department custody of Michael.

*Affirmed.*

Baker, J., and Duff, J., concurred.