COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Bumgardner
Argued at Richmond, Virginia


SHEBA BENILLE HOWARD

MEMORANDUM OPINION* BY
v.    Record No. 1275-99-2      JUDGE RUDOLPH BUMGARDNER, III
                                     MAY 16, 2000
CHARLOTTESVILLE DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Edward L. Hogshire, Judge

Llezelle Agustin Dugger (Carmel, Nelson &
Dugger, PLC, on brief), for appellant.

Lisa R. Kelley, Deputy City Attorney (Office
of the Charlottesville City Attorney, on
brief), for appellee.


On May 4, 1999 the trial court terminated Sheba Benille

Howard's residual parental rights in her two-year-old daughter,

Rhalausia Nashe Howard, pursuant to Code § 16.1-283(C).  The

mother argues the trial court erred in finding the evidence

sufficient to terminate her rights.  For the following reason,

we affirm.

The child was born September 25, 1996, when the mother was

nineteen years old.  In August 1997, the mother left the child

with her friend Brenda Shifflett.  At the time, the mother was

unemployed and receiving financial assistance (ADC).  The mother

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

told Shifflett she was going to Richmond for a hearing on shoplifting charges against her. The mother went into hiding. She gave up her apartment without notifying her landlord and moved her belongings to her father's house. The mother did not turn herself in and was a fugitive from the law. The mother never suggested a plan for retrieving the child. Shifflett notified DSS of the mother's failure to maintain contact with the child and her failure to leave sufficient diapers, formula, or money for her care.

During August 1997, the mother's father also took care of the child, but was either unable or unwilling to continue doing so. On August 26, 1997, he brought the mother to DSS and she signed an entrustment agreement giving DSS custody of the child. The juvenile and domestic relations district court approved the agreement. The child was treated at the emergency room for a virus and malnutrition. At eleven months old she had only been given formula, which was not age appropriate.

Under the entrustment agreement, the mother agreed to resolve her legal status as a fugitive. On September 26, 1997, DSS filed a foster care plan with the goal of returning the child to the mother. Under this plan, the mother was to show an ability to provide the child with appropriate and stable care, accept responsibility for her prior legal acts, take parenting and nutrition classes, maintain contact with the child once a week, obtain a substance abuse assessment and follow through

-

with recommended treatment, provide monthly child support, and maintain close contact with DSS.  Between August 1997 and January 1998, DSS made reasonable efforts to contact the mother.

The mother did not resolve her fugitive status and did not contact her child or DSS until January 1998.  At that time, she informed DSS she was arrested in October 1997 for arson and had been incarcerated since then.  The mother was convicted of setting fire to her mother's porch while her mother was inside the house.  DSS met with the mother, gave her a copy of the 1997 foster care service plan, and outlined her obligations under that plan.  When DSS advised the mother of the substance abuse assessment, the mother denied she needed this service.

A foster care review plan was filed April 8, 1998.  This plan also had the goal of returning the child to the mother.  Since January, the mother had sent two letters to the child.  The mother advised DSS that she was incarcerated for Charlottesville offenses but noted that she had pending charges in Albemarle and Chesterfield counties.  DSS did not know what the pending charges were or how long the mother might be incarcerated.  Under the review plan, the mother was to write to the child every two weeks, maintain monthly contact with DSS to advise her legal status and length of her incarceration, and to document her attempts to obtain the services required by the 1997 foster care plan.

In May 1998, the mother was convicted of felony possession of cocaine on November 17, 1997, while she was incarcerated. The court sentenced her to ten years with all but six months suspended. She was to be on good behavior for ten years and would be on supervised probation for a year upon her release.

DSS filed a third plan in August 1998 with the goal of adoption. The mother failed to obtain substance abuse services, or participate in parenting or nutrition classes during her almost two-year incarceration. Since January, the mother had written only four letters to the child. While she did maintain fairly regular contact with DSS, the mother was unable to offer a definite release date. The juvenile and domestic relations district court terminated the mother's residual parental rights in the child on January 25, 1999. The mother appealed.

The trial court held a de novo trial on April 19, 1999. The mother testified that since January 1999, she had taken one anger management class. Nonetheless, she was involved in an altercation with another inmate in March 1999 and at the time of the hearing was still in solitary confinement. Despite her convictions, the mother claimed that she was guilty of neither the arson nor the possession offenses. While incarcerated, the mother had parenting and life skills management classes, and narcotics anonymous, alcoholics anonymous, and substance abuse and counseling services available to her. While the mother testified she put herself on the wait list for several classes

-

in March 1999, she had not obtained the services DSS required under the 1997 plan. The mother anticipated a release date of April 1999 and testified she was willing to follow up on required services after that time.

On May 5, 1999, the trial court found that termination of the mother's residual parental rights was in the child's best interest under Code § 16.1-283(C). The trial court concluded that the mother failed to provide or substantially plan for the child's future "for a period exceeding six months" after her placement in foster care; failed to remedy substantially within a reasonable period of time the conditions which led to the child's placement; and failed to make substantial progress toward eliminating the conditions which led to that placement in accordance with her obligations under DSS's plans. The mother argues the trial court erred in finding the evidence sufficient to terminate her residual parental rights.

Residual parental rights may be terminated if it is in the child's best interest and the parent has not remedied substantially the conditions that led to their foster care placement within one year of their placement. See Code § 16.1-283(C)(2). The child's best interest is the paramount concern. "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Logan v. Fairfax County Dep't of Human Dev.,

-

13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citations omitted). Where the trial court hears the evidence ore tenus, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it. See Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 282, 343 S.E.2d 70, 73 (1986).

The evidence established that the mother was not living with the child in August 1997 when she gave DSS custody. At that time, she was unemployed, had never worked for more than a few months at a time, received public assistance, abandoned her housing, and was a fugitive from the police. From August 1997 to January 1998, the mother failed to provide for the child and failed to maintain contact with her or with DSS. The mother's failure to turn herself in violated the entrustment agreement.

DSS directed the mother to obtain a substance abuse evaluation and take parenting classes. It also required her to show that she could provide the child with an appropriate and stable home. The mother was apprised of these obligations in January 1998. Despite the availability of resources and services, the mother had only completed one anger management class by April 1999. DSS was appropriately concerned with returning the child to the mother since she was subject to a ten-year suspended sentence conditioned upon good behavior. The mother did not accept responsibility for her actions while she was incarcerated and had no plans for caring for herself, let

-

alone the child, upon her release.  During her incarceration, she was convicted of possession of cocaine and placed in solitary confinement for fighting with another inmate. Additionally, in April 1999 the child was almost three years old and had lived with her mother for less than a year.

We conclude that there is clear and convincing evidence to support the trial court's finding that the mother has been unwilling or unable to remedy the conditions that led to the child's foster care placement.  Accordingly, we affirm the trial court's judgment.

<u>Affirmed.</u>

-