COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Agee and Senior Judge Coleman


TONYA WOODWARD

                                        MEMORANDUM OPINION*
v.    Record No. 1819-01-2                 PER CURIAM
                                          MARCH 26, 2002
GREENE COUNTY DEPARTMENT
 OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF GREENE COUNTY
                    Daniel R. Bouton, Judge

            (Diana H. Wheeler; Somerville, Wilkinson &
            Wheeler, Ltd., on brief), for appellant.

            (Andrew L. Wilder; Shelia Haughey, Guardian
            ad litem for the minor child; Snook &
            Haughey, on brief), for appellee.


     Tonya Woodward (mother) appeals the decision of the circuit

court terminating her parental rights to her minor child, Octaria

Monae Woodward.  She contends the trial court erred in:  (1)

refusing to strike the evidence; (2) finding that she failed to

show good cause for failing to substantially remedy within twelve

months the conditions that led to the child's placement in foster

care; and (3) finding that termination was in the child's best

interest.  Upon reviewing the record and briefs of the parties, we

conclude that this appeal is without merit.  Accordingly, we

summarily affirm the decision of the trial court.  Rule 5A:27.

--------

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

BACKGROUND

Mother appealed the juvenile and domestic relations district court order terminating her residual parental rights. On April 30, 2001, the trial court conducted a de novo hearing.

Renee Smith, a caseworker with the Department of Social Services (DSS), testified that mother and her child first began receiving DSS services through the "View Program" in July 1999. DSS provided mother assistance with daycare services, transportation and housing. On October 1, 1999, mother left the child in the care of Vicki Weakley, the regular child-care provider. On October 3, 1999, DSS was contacted because mother failed to pick up the child. On October 4, 1999, mother visited the DSS office and advised Smith that she failed to return during the weekend because she had been drinking and using drugs. Mother agreed to participate in outpatient counseling and drug screening. On October 21, 1999, someone notified DSS that mother left the child with a friend on October 20, 1999, and failed to return or contact the friend. The friend did not know mother's location, so she could not contact her. Smith later learned that mother had been arrested on October 20, 1999, pursuant to an outstanding warrant for a bad check.

On October 21, 1999, DSS obtained an emergency order and placed the child in a foster home. Mother had no contact with the child during the first two months following placement because DSS did not learn mother's location until December 1999.

-

Due to problems with the first foster family, the child was placed in her current foster home on April 21, 2000.

Smith testified that mother has been unable to maintain stable employment. From November 1999 until September 2000, mother worked for nine different employers. During that eleven-month period, mother also changed residences several times. Smith explained that mother did not always report her whereabouts. The first two months following the child's removal and placement in foster care, DSS was unable to locate mother. Smith recalled that mother moved four times in the period from February 2000 until June 28, 2000. Smith was aware of mother's problem with transportation to work and drug treatment sessions; however, those difficulties resulted from mother moving out of Greene County, away from available transportation. Mother failed to timely notify Smith when she discontinued drug treatment sessions. Smith did not learn about her discontinuance until weeks later.

Steven Carneal was mother's probation officer for charges relating to driving on a suspended license. On September 27, 2000 and November 29, 2000, mother tested positive for cocaine use. Mother was referred to the Women's Alternative group for sessions three times each week. On December 13, 2000, mother advised Carneal she had overdosed on heroin in an attempt to commit suicide.

-

Charlene Moonan, a counselor with the Women's Alternative, testified that mother was evaluated and placed in group sessions scheduled to meet three times a week for five hours. The sessions began on May 11, 2000. Moonan stated that mother had a chronic problem with absenteeism. Although some absences were legitimate and excusable, some were not. Out of twenty-seven sessions, mother missed nine; four of the nine absences were not excused. Although mother's drug screens tested negative during this period, mother confided to Moonan that she had used or planned to use someone else's urine for a screening because her sample would test positive.

Linda Hamilton testified that mother was referred to her for substance abuse screening and evaluation. Mother initially tested positive for cocaine and marijuana use. Hamilton recommended "Intensive Outpatient Treatment to begin in December 1999." Mother missed a session and again tested positive for cocaine and marijuana on January 15, 2000. Mother "was referred to Boxwood, but [she] did not follow through." Mother's case was closed in March 2000, after mother moved to Culpeper County, which is out of Hamilton's service area.

Gail Kerry has been the child's foster mother since April 2000. She is a state licensed daycare provider and cares for children in her home. Kerry testified that the child has adjusted well and that everyone in the foster family loves her.

-

The evidence showed that mother married in early December 1999. She and her husband separated in early February 2000.

Sheila Haughey, the child's guardian ad litem, reported that the child has adjusted well to the foster family and has bonded with them. Haughey was concerned about mother's instability as evidenced by her inability to maintain a residence or job and to successfully complete a substance abuse program. Haughey did not feel mother had progressed to the point where return of the child was appropriate in the foreseeable future. She was skeptical of mother's purported recovery, believing it "was too recent and too fragile" in light of mother's past history. Given the child's positive experience with the foster parents and the "uncertainty of the mother's situation," Haughey opined it was in the best interests of the child that mother's residual parental rights be terminated.

The trial court found that DSS sufficiently proved its case against mother pursuant to Code § 16.1-283(C). Therefore, it terminated mother's residual parental rights.

ANALYSIS

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Development, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "'In matters of a child's welfare, trial courts are vested with broad discretion in making

-

the decisions necessary to guard and to foster a child's best interests.'"  Id.  The trial judge's findings, "'when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'"  Id. (citation omitted).

Code § 16.1-283(C)(2) provides that a court may terminate a parent's residual parental rights where a child has been placed in foster care as a result of court commitment if the court finds, based upon clear and convincing evidence, that (1) it is in the best interests of the child; (2) that the parents without good cause have been unwilling or unable within a reasonable period of time not to exceed twelve months to remedy substantially the conditions which led to the child's foster care placement; and (3) that reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies have been made to such end.

DSS obtained custody of the child in October 1999, when it placed the child in foster care.  During the child's temporary placement in foster care, DSS assisted mother in obtaining substance abuse treatment and other services.  However, mother failed to maintain a steady job, keep a permanent residence, maintain contact with DSS concerning her status and location and successfully complete a substance abuse program.  She tested positive for using cocaine on September 27, 2000 and November 29, 2000.  On December 13, 2000, almost fourteen months after

-

having her child placed in foster care, mother told her probation officer she tried to commit suicide by taking an overdose of heroin.

The child is doing well and living with a foster family who loves her. Her present situation contrasts sharply with the instability and uncertainty she experienced with mother. After careful consideration of mother's history and performance, the guardian ad litem concluded it was in the child's best interest to terminate mother's parental rights.

The trial court found that DSS presented clear and convincing evidence that termination is in the child's best interest and it is not reasonably likely that the conditions which led to the child's neglect or abuse can be substantially corrected or eliminated to allow the child's return within a reasonable period of time. This finding is not plainly wrong or without evidence to support it. Accordingly, the decision of the circuit court is affirmed.

Affirmed.