COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Felton and Senior Judge Willis


KAREN CHANDLER

                                   MEMORANDUM OPINION*
v.   Record Nos. 2853-02-3 through        PER CURIAM
              2856-02-3              MAY 13, 2003

STAUNTON-AUGUSTA COUNTY
 DEPARTMENT OF SOCIAL SERVICES


           FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                   Thomas H. Wood, Judge

          (Kathleen M. Mizzi Todd, on briefs), for
          appellant.

          (James B. Glick; Vellines, Cobbs, Goodwin &
          Glass, P.L.C., on briefs), for appellee.


     Karen Chandler (mother) appeals the decisions of the circuit

court terminating her residual parental rights in her children,

Jeffrey, James, Ryan, and Shannon.  On appeal, mother argues that

(1) the Department of Social Services (DSS) failed to provide

extensive reunification services as required by law, (2) the early

move for termination of parental rights was not supported by clear

and convincing evidence, (3) DSS failed to establish by clear and

convincing evidence that it provided a vast array of

rehabilitative services and interventions to remedy the conditions

leading to foster care, and (4) DSS failed to allow her a

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

reasonable time to attempt to remedy the conditions which led to her children's foster care placement. Upon reviewing the record and briefs of the parties, we conclude that these appeals are without merit. Accordingly, we summarily affirm the decisions of the trial court. See Rule 5A:27.

## BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence established mother first became involved with rehabilitative services through the Knoxville, Tennessee Department of Social Services during the early 1990's. Suzanne Keck, a representative of that agency, explained the Knoxville DSS provided mother with services including substance abuse counseling, sexual abuse counseling, recommendation and referrals to facilitate the provision of a safe and sanitary home, and referrals for marriage counseling. The Knoxville DSS made five findings of abuse and neglect.

Mother began receiving services from the Augusta County DSS and the City of Waynesboro DSS in 1992 and continued receiving services through the removal at issue in this case, a period of nine years. During that time, in 1998, Ryan was removed from mother's home. He was returned home but removed again, along with his three siblings, in July 2001. On September 24, 2001,

-

DSS filed its initial foster care service plans with the goals of adoption for all four children.

Dr. Jamie Smith, a professional counselor, testified he worked with James, Shannon, and Jeffrey beginning in February 2002. He opined that a return to mother would be detrimental to their health and delaying the determination of their future placement would cause behavior problems and deeper depression for the children.

Amy Simmons, a DSS social worker, testified about the agency's work with mother and her family. In 1992, DSS made a finding of abuse and neglect due to inadequate supervision and inadequate food. In September 1998, Ryan was hospitalized after consuming a potentially lethal dose of an antidepressant medication. DSS made a finding against mother of physical neglect. DSS enrolled mother and her husband in a parenting program, provided substance abuse evaluations and treatment, drug screening, and supervised visitation with all of the children. DSS further provided mother with a referral for funded counseling, arranged funding for drug treatment, provided food stamps, and Medicare and daycare funding for Ryan.

Julie Hawkins, the social worker assigned to mother's case, testified about the initial complaint and removal. The complaint concerned poor supervision and an allegation that the children were playing unsupervised in the roadway. The yard of mother's residence was filled with scattered debris, and three

-

dogs were chained or loose. The house was dirty, and had a broken window that left shards of glass in the yard and window frame. The children's mattresses lacked sheets, and the kitchen was filled with food debris and dirty dishes on the counters and floor. Hawkins requested mother undergo a number of drug screens. Mother did not immediately comply with any of the requests, instead waiting to be tested between four and fifteen days after the request. Hawkins scheduled psychological evaluations for mother on three separate occasions, and mother failed to appear for any of the appointments. During the time her children were in foster care, mother lived in seven different places and had not maintained steady employment.

ANALYSIS

I. and III.

Mother argues DSS failed to provide her with adequate rehabilitative and reunification services.

"The record must demonstrate that all 'appropriate, available and reasonable' efforts were taken by social agencies to remedy the conditions leading to the infant's foster care placement." Banes v. Dept. of Soc. Servs., 1 Va. App. 463, 466, 339 S.E.2d 902, 904 (1986) (citation omitted).

The evidence established that prior to announcing the goal of adoption for mother's children, DSS offered her a wide array of services. DSS provided mother with substance abuse counseling, sexual abuse counseling, recommendations to alleviate a dirty

-

home, marriage counseling, referrals for parenting classes, drug screens, in-home counseling, visitation services, referrals for psychological evaluations, Medicaid reimbursement for transportation, funding for substance abuse treatment, food stamps, daycare funding, lift services, housing assistance, and the provision of transportation. Mother was provided services from at least three different social service agencies over a period exceeding nine years.

Mother was ordered to undergo psychological evaluations, to obtain and maintain suitable housing, to obtain and maintain stable employment, to undergo random drug screens, and to have regular supervised visitation with her children. Mother failed to cooperate with DSS and was unable to maintain regular employment or stable housing. Mother, without good cause, failed to respond to the extensive and repeated rehabilitative efforts. The evidence supports the trial court's conclusion that DSS proved, by clear and convincing evidence, that it provided mother with adequate services.

## II. and IV.

Mother argues the immediate goal for termination of parental rights was not supported by clear and convincing evidence and that DSS failed to provide her with a reasonable amount of time to remedy the conditions which led to foster care.

-

Code § 16.1-281 requires social services agencies such as DSS to develop foster care plans detailing the services to be offered children placed in their legal custody.  Subsection (B) provides, in pertinent part, that

> [i]f the department, child welfare agency or team concludes that it is not reasonably likely that the child can be returned to his prior family within a practicable time, consistent with the best interests of the child, in a separate section of the plan the department, child welfare agency or team shall (a) include a full description of the reasons for this conclusion; (b) provide information on the opportunities for placing the child with a relative or in an adoptive home; (c) design the plan to lead to the child's successful placement with a relative if a subsequent transfer of custody to the relative is planned, or in an adoptive home within the shortest practicable time . . . .

Code § 16.1-281(B).  DSS determined, based upon mother's lengthy prior relationship with social service agencies and her inability to profit from the extensive services previously offered, that an immediate goal of adoption was in the best interests of the children.

The evidence supported a finding that DSS offered mother a wide array of different services designed to address, to the extent possible, all areas of concern and that, by failing to cooperate with these services, mother was unable to parent effectively.  DSS was not required "to force its services upon an unwilling or uninterested parent."  Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243, 288 S.E.2d 410, 415 (1982).

-

DSS properly determined adoption and the termination of parental rights was an appropriate immediate goal.

The record shows clearly that DSS representatives met often with mother and counseled her concerning her needs and problems, advised her of the social and rehabilitative services available to assist her, and offered to provide her with transportation to obtain those services. Yet, mother refused to accept many of the services offered her and failed to keep a number of the appointments. More important, mother exhibited little ability or willingness to improve the situation that existed when DSS first began contact with her. Mother was offered a variety of services from three different agencies over a period of almost ten years. The record supports the court's conclusion that mother was offered a reasonable time to correct the problems that led to foster care for her children.

The trial court's decisions to terminate mother's residual parental rights are supported by credible evidence showing both that the termination is in the best interests of the children and that the factors required by Code § 16.1-283(C)(2) are present. Accordingly, we summarily affirm the decisions of the trial court. See Rule 5A:27.

Affirmed.

-