COURT OF APPEALS OF VIRGINIA


Present:   Judge McClanahan, Senior Judges Coleman and Annunziata


PHYLLIS ARRINGTON

                                                            MEMORANDUM OPINION[*]
v.        Record No. 1703-05-2                                   PER CURIAM
                                                              JANUARY 24, 2006
RICHMOND DEPARTMENT OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                         Melvin R. Hughes, Jr., Judge

            (Robert D. Shrader, Jr.; Steingold and Shrader, PLC, on brief), for
            appellant.

            (Shunda T. Giles, Assistant City Attorney; Scott Cardani, Guardian
            *ad litem* for the minor children, on brief), for appellee.


        Phyllis Arrington, mother, appeals the trial court's decision approving the goal of adoption

and terminating her parental rights to her children, E.H. and D.H.  Arrington contends the evidence

was insufficient to support the termination of her parental rights pursuant to Code § 16.1-283(C)(1)

and (C)(2).  Because the trial court terminated Arrington's parental rights pursuant to Code

§ 16.1-283(C)(2) only, Arrington's claim based on Code § 16.1-283(C)(1) will not be addressed.

Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the trial court's decision.  See Rule 5A:27.

                                    Background

        We review the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

established that Arrington is the biological mother of a seventeen-year-old daughter S.H., a twelve-year-old daughter E.H. (born July 3, 1993), and an eleven-year-old daughter D.H. (born on May 1, 1994). On January 27, 2003, the Richmond Department of Social Services (RDSS) received a complaint that Arrington's husband, the children's stepfather, sexually abused S.H. The stepfather had allegedly been abusing S.H. since October 2000. In an effort to prevent removal of the children, RDSS met with Arrington and had her sign a safety plan that provided that the stepfather would no longer live in the home and would have no contact with the children. However, Arrington violated that plan and allowed the stepfather back into the home and allowed him to have contact with the children, including taking the children to school. The stepfather even accompanied Arrington to school to look for S.H.

Therefore, on January 29, 2003, RDSS removed the children from Arrington and filed petitions alleging abuse and neglect. The Richmond Juvenile and Domestic Relations District Court (JDR court) granted the petitions, finding that all three children were abused and neglected based on the sexual abuse of S.H. and finding that Arrington had failed to protect D.H. and E.H. Initially, the goal was to return the children to Arrington's home after Arrington participated in a substance abuse after-care program, obtained employment, and ensured that there would be no contact between the children and their stepfather. Deborah Cheatham, a social worker, met with Arrington and learned that although the JDR court had found that the stepfather abused S.H., Arrington did not believe her daughter's allegations. Cheatham worked with Arrington to find suitable alternative housing. Cheatham arranged several appointments for Arrington to meet with someone at the Emergency Shelter and apply for housing, but Arrington did not keep any of the appointments. Finally, Cheatham helped Arrington complete a housing application, but Arrington never filed the application. Arrington moved several times. She stayed at a relative's home and acknowledged that her husband, the children's stepfather, spent the night there at least one night a week. Arrington

admitted that her housing situation was inappropriate for the children. She planned to put a deposit on a new apartment on January 14, 2005, but never did so and claimed she failed to do so because she lost her job. However, Arrington did not lose her job until February 2005.

Cheatham changed the goal to placement with relatives, but after no relatives were found who could provide an appropriate home for the children, she changed the goal to adoption. Although the court had ordered that Arrington not allow contact between the children and the stepfather, Arrington stated that she would continue having contact with him because "he helps her with the bills." Arrington said the stepfather "was going to be there, that she had her own personal life." Arrington even brought the stepfather on one of her visits with the children.

Dr. Linda Daugherty, a clinical psychologist, evaluated Arrington and found Arrington had limited ability to make informed decisions about her children's welfare because of limited cognitive abilities, poor problem solving skills, immature coping mechanisms, and emotional instability. Daugherty also thought it was likely that Arrington would rely on someone else to make decisions for her. Daugherty recommended that Arrington continue drug monitoring and relapse prevention based on Arrington's admission of cocaine abuse. Arrington told Daugherty that she had no intention of leaving her husband although the court had told her she had to leave him in order to regain custody of her children.

In the two years since D.H. and E.H. were placed in foster care, Arrington failed to obtain stable housing or employment, and did not prevent the stepfather from having contact with the children. On January 11, 2005, the JDR court approved the goal of adoption and terminated Arrington's parental rights. At a trial *de novo* on March 30, 2005, the Richmond Circuit Court found that despite the RDSS's efforts to assist in remedying the conditions that led to the children's foster care placement, Arrington failed to remedy the conditions within a reasonable period of time. The trial court approved the goal of adoption and terminated Arrington's parental rights.

<u>Analysis</u>

When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." <u>Logan v. Fairfax County Dep't of Human Dev.</u>, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." <u>Farley v. Farley</u>, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." <u>Logan</u>, 13 Va. App. at 128, 409 S.E.2d at 463.

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence, that (1) the termination is in the best interests of the child, (2) "reasonable and appropriate" services have been offered to help the parent "substantially remedy the conditions which led to or required continuation of the child's foster care placement," and (3) despite these services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care." "[T]ermination of residual parental rights is a grave, drastic, and irreversible action," <u>Helen W. v. Fairfax Count Dep't of Human Dev.</u>, 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), and we "'presume[] [the trial court has] thoroughly weighed all the evidence [and] considered the statutory requirements,'" <u>Logan</u>, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

RDSS proved by clear and convincing evidence that termination of Arrington's parental rights was in her children's best interests. The evidence proved that since the children's removal and placement into foster care two years earlier, Arrington has not found stable housing despite assistance from RDSS, and has not maintained stable employment. Arrington has refused to acknowledge that her husband, the stepfather, would be unable to remain in the home if she

regained custody of her children. Arrington says she intends to have continuing contact with the stepfather because he helps with household expenses, and she has continued to do so as of the evidentiary hearing. Thus, Arrington has refused to protect her children by prohibiting the stepfather from having contact with them. Considering these circumstances, the trial court could properly find that the children would be subjected to an unhealthy and unsafe environment if returned to Arrington's care.

This record supports the trial court's finding that RDSS proved by clear and convincing evidence that the best interests of the children would be served by terminating appellant's parental rights pursuant to Code § 16.1-283(C)(2). It is apparent that appellant failed "to substantially remedy" the conditions, despite the help offered, "which led to or required continuation of the child's foster care placement" within a reasonable period of time. It is also apparent that Arrington is unwilling to prohibit the stepfather from having contact with the children. Accordingly, we summarily affirm the judgment. See Rule 5A:27.

Affirmed.