COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Retired Judge Hodges[*]


MELINDA SPONAUGLE-CANTRELL

                                        MEMORANDUM OPINION[**]

v.      Record No. 0355-09-3                       PER CURIAM
                                         SEPTEMBER 8, 2009
WISE COUNTY DEPARTMENT
  OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF WISE COUNTY
Joseph R. Carico, Judge

(Damie F. Carter, on briefs), for appellant.  Appellant submitting on
briefs.

(Karen T. Mullins; J. Marty Adkins, Guardian *ad litem* for the minor
children; Office of the County Attorney; Adkins & Hunnicutt, on
brief), for appellee.  Appellee and Guardian *ad litem* submitting on
brief.


Melinda Cantrell (mother) appeals the trial court's order terminating her parental rights to

her children.  Mother argues that (1) she made substantial improvement toward remedying the

conditions which prompted the removal of her children; (2) the Wise County Department of

Social Services (WCDSS) failed to provide reasonable and appropriate services to assist her in

improving her condition; and (3) there was insufficient evidence to terminate her parental rights.

Upon reviewing the record and briefs of the parties, we conclude that this appeal is without

merit.  Accordingly, we affirm the decision of the trial court.

---

[*] Retired Judge Hodges took part in the consideration of this case by designation pursuant
to Code § 17.1-400(D).

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Mother moved from New York to Virginia in 2004 with three of her four children (the older children), where she married Jamie Cantrell and had three younger children with him: twins, J.C. and D.C. (born January 7, 2004), and T.C. (born June 12, 2006). This appeal challenges the termination regarding the three younger children.

Mother's oldest child, seventeen-year-old C.C., testified that she and the other older children were removed in May 2005, returned in July 2006, and removed again in October 2006, when the younger children were removed. C.C. recalled the house was dirty and mother "had mood swings all of the time," and she would "get really, really angry sometimes," causing the older children to hide from her. C.C. described her home situation as "chaos" and explained that she cared for the younger children because mother "would lay in bed and she wouldn't want to get up."

Monica Cross, a child protective services worker with WCDSS, testified regarding the unstable and unsanitary conditions in the home in 2005 and the services provided. Cross explained that by November 2005, "[e]veryone in the home had a mental health counselor that they saw on an ongoing basis," and a parent aide and counselors visited to assist in helping the parents make the home clean and safe. The family also received medical and mental health counseling and services.

WCDSS took custody of mother's children on October 20, 2006, and placed them in foster care pursuant to an emergency removal petition alleging the children were abused or neglected. The affidavit described domestic violence by the father in the home, mother's inability to care for and protect the children due to the father and her mental state, and mother's inability to find alternative housing away from the father. The 2006 affidavit described the home as unsanitary and reported that the family had received services for the past year through a foster care worker, but the services did not remedy the problems.

Darlene Lawson was the foster care social worker for all six of mother's children at the time of the removal in October 2006. The twins were two-and-one-half years old and T.C. was four months old at the time of removal. Lawson recalled that mother was receiving mental health services and parent aide services at the time and there were "several workers in the home" to help mother remedy the conditions that caused the removal of the children. Lawson explained that mother was bipolar and on medications, however, "on a few occasions she would go off of them." Despite the services offered, Lawson was concerned that mother could not provide a stable home and care for herself or the children. Based on her experience working with the family, Lawson did not feel that mother "could ever provide a stable environment" because she cannot keep herself stable for any length of time. Lawson explained that mother failed to act promptly to protect the children in the face of her husband's long-term abuse and violence. Although mother attended parenting classes, anger management classes, and mental health classes, Lawson saw no "progress on how she has used that to provide a more stable environment for her children, and to establish herself in a more stable life." Lawson observed visitation with all six children and described it as chaotic, partly because of mother's excessive yelling to discipline them during the one-hour visit. Lawson opined that mother's "mental health issues will be up and down." The three younger children all had medical issues because they

were born prematurely. They are currently receiving treatment and are now in stable foster homes. The twins have special needs that are being met in their foster home. WCDSS prepared two different foster care plans while Lawson was involved in the case.

The first plans were filed in the juvenile and domestic relations district court (juvenile court) and reviewed on January 23, 2007, with a goal of relative placement. On August 20, 2007, the juvenile court conducted a foster care review hearing and held that reasonable efforts had been made by the agency to place the children in accordance with the foster care plans. The juvenile court approved the plans for relative placement. It directed WCDSS to continue to utilize reasonable efforts to accomplish the goals of the plan.

On February 4, 2008, foster care worker James Kinser investigated physical abuse to mother's older children and removed the three older children from the home at that time. During that same month, mother visited a mental health facility due to thoughts of suicide and depression.

On March 4, 2008, the juvenile court disapproved the foster care plans of relative placement and directed that a new plan be submitted by April 1, 2008. On March 18, 2008, WCDSS filed new foster care plans identifying a permanent goal of adoption. On April 1, 2008, the juvenile court approved the plans and directed WCDSS to file petitions to terminate mother's parental rights.

On June 13, 2008, twenty months after the children were removed and placed in foster care, WCDSS filed petitions to terminate mother's residual parental rights to the three young children. The juvenile court granted the petitions and terminated mother's parental rights on October 27, 2008, just over two years after the date the children were initially removed and placed in foster care. It based its decision on Code § 16.1-283(C).

Mother appealed that decision to the trial court, which conducted an *ore tenus* hearing on January 27, 2009. After hearing and considering evidence and argument, the trial court granted the petitions to terminate mother's parental rights. It noted that the children had been in foster care doing well for over two years and that WCDSS provided several services and exhausted every resource to help mother remedy the conditions. Despite the provision of services and assistance, the trial court expressed concerns about mother's past bad judgments, her bipolar disorder and her ability to control it, past incidents and complaints regarding the children, the lack of progress in remedying the conditions, and the opinion of mother's foster care worker questioning mother's ability in the future to maintain stability and provide a safe and healthy environment for the children.

Code § 16.1-283(C)(2) provides that the residual parental rights of a parent may be terminated if the trial court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Decisions to terminate parental rights under Code § 16.1-283(C)

> hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms, 46 Va. App. at 271, 616 S.E.2d at 772 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The trial court's findings, "'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support [them].'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

The evidence established that mother received various levels of services for several years, yet she was unable within a twelve-month period to remedy the conditions that brought the children into foster care.  WCDSS presented clear and convincing evidence that termination was in the best interests of the children and that mother was unable or unwilling within a reasonable amount of time to remedy the conditions that brought the children into foster care.  Accordingly, the decision of the trial court is affirmed.

Affirmed.