COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, Petty and Senior Judge Bumgardner


FLORINDA PEREZ

                                                              MEMORANDUM OPINION[*]
v.       Record No. 1644-09-4                                        PER CURIAM
                                                                 FEBRUARY 16, 2010
FAIRFAX COUNTY DEPARTMENT
  OF FAMILY SERVICES


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Marcus D. Williams, Judge

(John B. Jacob, Jr., on brief), for appellant.

(David P. Bobzien, County Attorney; Peter D. Andreoli, Jr., Deputy
County Attorney; Deborah C. Laird, Assistant County Attorney, on
brief), for appellee.

(Michael S. Arif; Martin, Arif & Greene, PLC, on brief), Guardian
*ad litem* for the minor child.


Florinda Perez (mother) appeals the trial court's order terminating her parental rights to

her child, O.R.  She contends the Fairfax County Department of Family Services (FDFS) failed

to present sufficient evidence to prove she was unable or unwilling to remedy the conditions

which prompted the removal of her child.  Upon reviewing the record and briefs of the parties,

we conclude that this appeal is without merit.  Accordingly, we summarily affirm the decision of

the trial court.  See Rule 5A:27.

BACKGROUND

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

FDFS first became involved with mother in 2000. Then, FDFS provided services to mother, Juan Rodriguez (father), and an older child (A.R.), who died a short time later from accidental poisoning. In August 2005, FDFS "reopened" mother's case "due to concerns of physical neglect [of the children[1]] and the lack of cooperation" by mother and father in caring for the children. The court ordered that the family receive a number of services "including home based counseling for the entire family," and "mental health evaluations for" mother and O.R.

Daniel Figg was mother's ongoing social worker beginning in the fall of 2005. On December 20, 2005, the juvenile and domestic relations district court (juvenile court) issued a protective order because of FDFS's concerns about mother's lack of supervision. The court ordered that O.R. not be left alone with mother and that mother send O.R. to daycare five days per week.

Mother was tested on January 13, 2006, diagnosed with major depression, and prescribed an anti-depressant. FDFS provided services to mother "to try to keep her children in the home." Figg reported that FDFS provided the following "wraparound services" to the family since August 2005:

> [A]ssistance with prescriptions, transportation to doctor's
> appointments and court-ordered evaluations, weekly home visits
> with both parents, and continued funding for intensive home-based
> counseling at the rate of eight hours per week. Throughout this
> time, this Social Worker and the home-based provider have
> counseled the parents regarding the children's needs. Both parents
> were given advice regarding teamwork, communication, and stress

---

[1] Although this appeal focuses on the termination of mother's parental rights to O.R., mother also has a younger child, E.R., who is not the subject of this appeal.

management. They were also taught techniques for managing the children's behaviors.

FDFS learned in early March 2006 that mother had beaten then five-year-old O.R. with a belt, so Figg prepared an affidavit, requesting an emergency removal order. At the time of the abuse, mother was not supposed to be alone with the children pursuant to the December 2005 order. Moreover, parent evaluations disclosed that mother abused alcohol and father regularly abused cocaine. In his affidavit for removal, Figg requested that O.R. and his brother be removed for their safety and to protect them from serious risk of further harm. The trial court found by a preponderance of the evidence that O.R. was "physically abused" and granted the emergency removal request. As a result, FDFS placed O.R. and his younger brother in a therapeutic foster home.

On May 11, 2006, FDFS filed a Foster Care Service Plan with a goal of "Return Home." In addition to other services provided, the plan required mother to complete psychological and neuropsychological evaluations, follow through with all recommendations, demonstrate an understanding of O.R.'s specific needs, develop a plan to address his special needs, and participate in regular parental visitation with O.R. and his brother. Mother was also required to maintain stable and adequate housing, financially care for the children's needs, demonstrate effective parenting, understand the effects of abuse and neglect on the children, establish structure and boundaries, be consistent with the children, complete a parent-child assessment, and follow through with all recommendations.

Clinical psychologist Dr. Rocio Lopez tested and evaluated mother in May 2006. Dr. Lopez administered a battery of cognitive, academic, neuropsychological, and emotional tests. Mother performed poorly and tested in the range of mild mental retardation. Emotional tests showed mother suffered from major depression. Dr. Lopez reported that mother would not

acknowledge O.R.'s special problems and needs and opined that such denials made it difficult for mother to understand and care for O.R.

In an October 16, 2006 Foster Care Service Plan Review, FDFS reported that mother's parenting skills "showed important deficits" in that she lacked the ability to organize and structure O.R.'s behavior, and she had difficulty acting as an authority figure and in establishing safe boundaries for O.R. Moreover, FDFS reported that mother "continues to be unemployed and she exhibited poor parenting skills during weekly visitation."

Clinical psychologist Gloria Morote tested O.R. in November and December 2006. During testing, O.R. exhibited oppositional behavior, restlessness, impulsiveness, and aggression, and Dr. Morote had to constantly redirect his focus and provide structure. Although test results indicated O.R. had an extremely low IQ, Dr. Morote did not find him "mentally deficient." She opined that the lack of verbal skills could be attributed to environmental factors. Moreover, O.R.'s score was reduced due to "his significant behavioral, emotional and attentional deficits." His non-verbal skills were much stronger than his verbal skills, and he had "very poor attention, verbal reasoning and visuomotor processing functions." Dr. Morote also opined that O.R. "is struggling with depression and anxiety."

Social worker Vicky Ramos-Ruiz worked with mother and O.R. and was present during their visitations from 2006 until March 2008. Ramos-Ruiz explained that mother failed to engage O.R. in play or properly supervise him during visits. Mother would allow him to go to the bathroom by himself contrary to FDFS instructions not to do so, and when O.R. would run out of the visitation room, mother would not retrieve him, even after Ramos-Ruiz advised her to do so. Mother refused to acknowledge O.R.'s behavior and cognitive problems, insisting that placement in foster care caused his behaviors and deficits.

On August 17, 2007, seventeen months after O.R.'s emergency removal, FDFS filed another Foster Care Service Plan. Part A of this plan changed the goal to adoption. FDFS explained that mother has been unwilling or unable to implement behavior management strategies FDFS introduced to her. Moreover mother "did not work and has limited employable skills." FDFS reported that O.R. had "little impulse control," had difficulty with rules and structure, was physically delayed, was developmentally delayed, functioned poorly in school, sought negative attention at home, and required special education placement. In Part B of the service plan, FDFS reported that mother and father "did not make progress to achieve family reunification." They were unable to safely care for and meet O.R.'s special needs. FDFS explored placing O.R. with relatives, but none were appropriate candidates. Therefore, "[a]n appropriate adoptive home [was deemed] the only viable option."

Jennifer Roberts is an adoption social worker and began working with mother and O.R. after the change in goal to adoption. She explained that O.R.'s negative behaviors escalated at that time, and he needed to be placed in higher levels of care to keep him safe and to provide "more structure, more supervision and more services."

After reviewing the evidence and considering closing argument, the trial court found that O.R. "is a seriously disturbed child with clinically relevant scores for attentional, oppositional and conduct disorders." He has "severe behavioral, emotional and cognitive developmental problems" that require special services. Although mother had been provided services and resources for almost three years, the trial court found she "has not even come close to" remedying the problems that brought O.R. into foster care and ruled that "mother has been unable or unwilling to remedy substantially the conditions which led to [O.R.'s] placement [with DSFS]." As a result, the trial court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2).

DISCUSSION

Mother argues she "remedied substantially the conditions that led [O.R.] to be placed in foster care," and "is ready for [O.R.] to be returned to her." She asserts that there was insufficient clear and convincing evidence that termination was in O.R.'s best interests.[2]

The residual parental rights of a parent may be terminated if the trial court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

O.R. was in foster care from March 2006 until the hearing in May 2009. During that time, FDFS provided extensive services and resources to mother and O.R. The evidence showed that mother suffered from major depression, mild mental retardation, and was a recovering alcoholic. At the time of trial, mother had no money and no transportation and had been living for three months in a friend's trailer. There was no bed for a child, and mother was unable to provide details as to her employment status or to demonstrate how she would provide for O.R.

---

[2] FDSS argues mother failed to preserve her argument that there was insufficient evidence to support the trial court's decision to terminate. It contends mother failed to include this argument as an objection in the final order and she failed to include in the appendix the May 21, 2009 transcript containing closing arguments and the trial court's ruling.

The record on appeal contains the May 21, 2009 transcript, therefore, we are able to review it as part of the record. A review of page 28 of that transcript reflects that mother argued that FDFS "has not met its burden of clear and convincing evidence, and it is not in the best interest to terminate the rights between [O.R.] and his mother." Accordingly, we address the sufficiency of the evidence to support the trial court's decision.

O.R. has severe special needs, as well, and the evidence demonstrated that, despite many years of services provided to mother, she would never be able to safely and consistently provide the structure, supervision, guidance or care O.R. requires.

We cannot say that the trial court erred in finding that FDFS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(2) and proving that it was in the best interests of the child to terminate mother's parental rights. Accordingly, the decision of the trial court is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>