COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Felton and McClanahan
Argued at Alexandria, Virginia


MELISSA McCUTCHEON
                                                    MEMORANDUM OPINION* BY
v.         Record No. 0174-03-4          JUDGE ELIZABETH A. McCLANAHAN
                                                         MARCH 30, 2004
WARREN COUNTY DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF WARREN COUNTY
John E. Wetsel, Jr., Judge

J. Daniel Pond, III (Napier, Pond, Athey & Athey, P.C.,
on brief), for appellant.

Neal T. Knudsen (Neal T. Knudsen, P.C., on brief),
for appellee.

Brian M. Madden, Guardian *ad litem* for the minor children.


        Melissa McCutcheon appeals an order terminating her residual parental rights with

respect to her four children pursuant to Code § 16.1-283.  She contends that the trial court erred

in:  (1) finding that the Warren County Department of Social Services (DSS) made reasonable

and appropriate efforts to provide services to her; (2) finding that the circumstances resulting in

the removal of the children will not be substantially corrected within a reasonable time; and,

(3) failing to continue the case and direct DSS to provide further services.  For the reasons that

follow, we affirm.

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  Facts

This case involves the termination of parental rights to four children.  Two of the children were fathered by William McCutcheon.[1]  At the time of the hearing, appellant was still married to McCutcheon, though estranged.  McCutcheon sexually molested one of the children in May 1999, while the child was in the custody of appellant and Lewis Lohr.  Lohr is the father of the other two children involved in this appeal, and was appellant's intermittent live-in paramour and co-parent.  There is evidence in the record that appellant had reported Lohr to DSS for physically abusing the children.[2]

Appellant's history with DSS began in 1996 or 1997 in Culpeper County and continued when she moved to Orange County in 1997.  In 1999, after the sexual assault, Orange County DSS made founded dispositions concerning two of the children.  One of the children was found to be at high risk for medical neglect, and another was found to be at high risk for physical neglect.  Appellant and Lohr were found, among other things, to lack parenting skills, and to be unable to provide the children's minimal needs of shelter, clothing and supervision.  The Orange County DSS also found that appellant did not secure prompt counseling for the child who was molested.

In 2000, after appellant, Lohr and the children moved to Warren County, several public service agencies attempted to provide services to the family.  In December 2000, when voluntary efforts failed to improve the children's living situation, DSS moved for a protective order.  In March 2001, after finding physical neglect of all the children, and after a doctor reported that one

---

[1] William McCutcheon's parental rights to his children were terminated prior to this case.

[2] At the time of trial, Lohr was incarcerated for perjury in connection with swearing out a false criminal complaint against a DSS caseworker.

of the children may have been sexually abused by Lohr, DSS obtained an emergency removal order.  At the time of removal, appellant and the children were living with Lohr.

In April 2001, after a preliminary removal hearing, the juvenile and domestic relations district court found that there was evidence that at least one, if not all, of the children had been sexually abused, that all of the children suffered from a long history of abuse and/or neglect, and that the children were being maintained in a "dirty, unhealthy condition."

In May 2001, foster care service plans for each of the children were filed.  The program goal of each plan was to return the child home.  The responsibilities that appellant was required to meet in order to achieve the goal for each child were identified as:

> -Schedule and attend individual therapy at Northwestern Community Services Board.  She is to attend all scheduled appointments and follow treatment recommendations (Target date: Ongoing).
> -If Ms. McCutcheon chooses to reside with Mr. Lohr, he must have successfully completed the Shenandoah Valley Sex Offenders treatment program.  The Department will not consider returning the children if he has not successfully completed the sex offender program (Target date:  Ongoing).
> -Obtain and maintain adequate housing that consists of at least three bedrooms.  The house must pass a home safety inspection to be performed by the Building Inspector.  It is the responsibility of Ms. McCutcheon to arrange for building inspection.  Any change in housing will result in Ms. McCutcheon needing to obtain a new building inspection. (Target date:  Ongoing).
> -Obtain and maintain employment that can cover all financial needs.  There is to be no break in employment.  If Ms. McCutcheon decides to terminate employment, she must have a new job to go to immediately. (Target date:  Ongoing).
> -Provide monthly verification of her income and expenses.  This is to include verification of rent payment, electric payment, phone payment, and water/sewer payment. (Target date:  Ongoing).
> -Attend parenting classes the Department deems appropriate.  The Department will notify Ms. McCutcheon in writing as appropriate classes become available (Target date:  Ongoing).
> -Obtain and pay for transportation to all appointments (Target date: Ongoing).
> -Schedule and complete a psychological evaluation with Dr. Bernard Lewis (Target date:  June 8, 2001).

> -Will follow and complete all recommendations outlined in
> Dr. Lewis' evaluation (Target date: Ongoing).
> -Will notify the Department in writing within 5 days of any
> changes in living situation, address, or employment (Target date:
> Ongoing).

The plan also required DSS to provide services for the children's medical, physical and psychological needs, and visit them in order to monitor their progress and provide supportive services. DSS was also required to assist in locating services as requested by the parents.

A second set of foster care service plans was entered in October 2001, with the goal of returning the children to appellant. After a foster care review hearing in December 2001, the district court found that Lohr had a recent episode of sexually deviant behavior toward minor girls, and ordered appellant to live apart from Lohr.

By April 2002, after finding appellant non-compliant in addressing the responsibilities as set out by the foster care plans, DSS entered a new foster care service plan with a goal of adoption for the children. Appellant had not found stable housing, had not maintained steady employment, had not provided DSS with a statement of her income on a regular basis, had not attended therapy at Northwestern Community Services Board, and had not provided changes of address to DSS. DSS also found that appellant was unwilling to obtain separate housing from Lohr and that as long as Lohr was in the household, appellant could not provide safe housing for the children. DSS petitioned for a permanency planning hearing.

The permanency planning hearing was held on August 30, 2002. After the hearing, the district court terminated appellant's parental rights as in the best interests of the children. It entered an order on September 6, 2002, finding that appellant, pursuant to Code § 16.1-283(C):

> without good cause, has been unwilling or unable within a
> reasonable period of time not to exceed twelve months from the
> date the child was placed in foster care to remedy substantially the
> conditions which led to or required continuation of the child's foster
> care placement, notwithstanding the reasonable and appropriate

- 4 -

efforts of social, medical, mental health or rehabilitative agencies to such end.

Approximately seventeen months after the initial foster case service plans were entered, the court found that, without justifiable reason, appellant had complied with just two of the requirements. The chancellor found that the best interests of the children were to place them in the custody of DSS. The court also found that it was highly unlikely that the circumstances resulting in the removal of the children would be substantially corrected or eliminated within a reasonable period of time under Code § 16.1-283(B)(2). He further found that reasonable and appropriate efforts had been made by DSS to remedy the conditions that led to the initial removal of the children. The chancellor then terminated appellant's residual parental rights to the children.[3]

## II. Analysis

We view the evidence in the light most favorable to the party prevailing below and grant to that evidence all reasonable inferences fairly deducible therefrom. Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "When addressing matters concerning [children], including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child[ren]'s best interests." Id. "'[T]rial courts are vested with broad discretion in making the decisions necessary to guard and to foster [the children]'s best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). The trial judge's findings, "'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (citation omitted).

---

[3] The guardian *ad litem* for the children recommended to the trial court, and to this Court at oral argument, that mother's residual parental rights be terminated.

Code § 16.1-283 establishes the procedures and grounds under which a court may order the termination of residual parental rights. Pursuant to Code § 16.1-283(B), the court may terminate a parent's residual rights to a child who has been neglected or abused and placed in foster care if the court finds, based upon clear and convincing evidence, that it is in the child's best interest and that:

1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time . . . .

*Prima facie* evidence of the conditions set forth in subsection (B)(2) exists when there is proof that the parent, "without good cause, [has] not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to . . . prevent the neglect . . . of the child." Code § 16.1-283(B)(2)(c).

The trial court found that the evidence proved by clear and convincing evidence, both, (1) that DSS made "reasonable and appropriate efforts" to help mother remedy the conditions "which led to or required continuation of the children's foster care placement" and, (2) that appellant, without good cause, failed "to substantially remedy" those conditions. It also found that "myriad services" were offered to appellant. The evidence established that DSS began working with mother in 1997, even before it obtained custody of the children. DSS submitted foster care plans with the goal of returning the children home in April 2001 and again in October 2001. During that time, DSS assisted appellant in obtaining an evaluation and therapy with Dr. Lewis and Ms. Spresser, respectively. According to the responsibilities that appellant agreed to in the foster care plans, she was required to follow the treatment recommendations of

Dr. Lewis. DSS provided services. Appellant did not follow the treatment recommendations as required under the foster care plans.

The evidence also supports the finding that appellant was given ample time and opportunity to remedy the conditions that led to the removal of the children. Appellant continued to live with Lohr throughout the course of the case, even though she was warned by DSS that doing so would place the children at risk. Appellant stated that Lohr was "all she had" – and she expressed her intent to the court that she wanted to seek return of the children to her and Lohr. She failed to maintain adequate housing. She failed to follow through on regular counseling that had been arranged for her. She did not obtain appropriate and regular employment. She failed to provide DSS with monthly verification of her income and expenses. She was required to inform DSS of any change in her living situation, yet she failed to inform DSS when she and Lohr were cohabiting, or even where she was living for long stretches of time. Appellant admitted that she was not able to take care of the children given her circumstances and that she needed more time to correct the conditions.

The record supports the trial court's finding that DSS presented clear and convincing evidence that appellant did not substantially remedy the conditions that led to the removal of the children and that it is not reasonably likely that the conditions which led to the children's neglect and/or abuse will be substantially corrected or eliminated within a reasonable period of time. The evidence supports the trial court's finding that termination from their mother is in their best interests and that the trial court did not err in failing to continue the case. For that and the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>