COURT OF APPEALS OF VIRGINIA

Present:    Judges Benton, Humphreys and Senior Judge Overton

JAMIE FOSTER

                                                        MEMORANDUM OPINION[*]
v.        Record No. 0026-04-4                          PER CURIAM
                                                        JULY 20, 2004
FAIRFAX COUNTY DEPARTMENT OF
 FAMILY SERVICES

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Marcus D. Williams, Judge

(Michael S. Arif; Martin & Arif, on brief), for appellant.

(David P. Bobzien, County Attorney; Peter D. Andreoli, Deputy
County Attorney; Dennis R. Bates, Senior Assistant County
Attorney; Deborah C. Laird, Assistant County Attorney, on brief),
for appellee.


        Jamie Foster appeals the trial court's decision terminating her parental rights to her son.

Foster contends the evidence was insufficient to support the termination or to support the finding

that termination was in her son's best interest.  Foster also contends that the trial court and the

Department of Family Services failed to properly consider placing her son with relatives.  Upon

reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

Background

        We view the evidence in the light most favorable to the prevailing party below and grant to

it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

established that Danielle Nicholson, a social worker for the Department, investigated a complaint of physical neglect by Foster of her son, born July 14, 1998 and her older daughter, born September 23, 1988. During the investigation, Foster acknowledged using heroin and cocaine, leaving her children unattended on January 31, 2001, and feeling depressed and overwhelmed by her situation. As a result of Foster's addiction, she lived a chaotic life and exposed her son to strangers, drug use and domestic violence. Foster agreed to allow relatives to care for the children while she sought treatment for her addictions, and the children were put in the care of their maternal uncle, Jeff Hudgins. A Preliminary Protective Order was entered on February 8, 2001.

Following a hearing on the Preliminary Protective Order, the court found that the children were neglected due to Foster's abuse of heroin. The court ordered the Department to continue exercising protective supervision over the children, that the children remain in foster care, that visitation between Foster and the children was at the discretion of the Department, and that Foster submit to mental health and alcohol and drug assessments and follow all treatment recommendations. At the dispositional hearing, the court heard evidence that it was in the son's best interest for legal custody to be transferred to the Department and for him to continue living with Hudgins. The court transferred legal custody to the Department and approved the foster care plan with the goal of returning him home. As of May 2, 2001, Foster's whereabouts were unknown and she had not complied with the court's order to submit to mental health and alcohol and drug assessments and to treatment. The Department later learned that Foster was incarcerated on felony charges in Danville.

On February 5, 2002, the court reviewed and approved a foster care plan with the goal of returning the son home. At that time, Foster was in a drug treatment center in Pennsylvania. Because Foster had walked out of a residential drug program, had remained in Pennsylvania and lived with a man unknown to the Department, and had again been incarcerated, the court ordered

that any person with whom Foster was living consent to a parenting assessment. The court ordered Foster to provide the Department with all information regarding her addiction treatment, including her compliance with her treatment plan, and to provide all information regarding her employment, giving releases to allow the Department's designee to speak to her employers. The court also ordered Foster to successfully complete an approved drug treatment program and to submit to random urine screens.

While living in Pennsylvania from September 2001 until January 2002, Foster visited her son every two or three weeks. As a consequence of these sporadic visits and Foster's unavailability, her son exhibited stuttering, tantrums, and night terrors. After Foster left Pennsylvania in January 2002 and was incarcerated in Danville, her son had a period of stability. However, his stuttering and behavioral problems re-emerged when the possibility of renewed visits with his mother was discussed with him.

Upon her release from prison in April 2002, Foster returned to Pennsylvania to live with a man. After this man was incarcerated, Foster returned to the area where her son lived and claimed her son was her top priority. After Foster had returned to the area and her son had been in foster care for about twelve months, the Department filed a new foster care plan changing the goal to adoption, but then moved to amend the plan making the interim goal to return home. The court ordered this on November 1, 2002. The court's ruling was based on the conditions that Foster obtain and maintain stable housing and employment, that she follow all recommendations related to substance abuse treatment, that she abstain from drug and alcohol use and be monitored by random urine screens, and that she submit a budget and demonstrate appropriate parenting abilities during visits with her son.

On April 30, 2003, the court approved the permanent goal of "return home" and transferred custody from the Department back to Foster. The Department maintained protective supervision

over Foster's son and Foster was ordered to continue with drug and alcohol screens and therapy, to participate in home-based services, and to follow any recommendations. One week after the son's return home, Foster lost her job and housing. Foster's emotions were unstable, she was depressed and was barely able to function. Foster acknowledged to her social worker that she had used heroin within one week of her son's return to her custody. Foster had two positive urine screens for heroin in May 2003.

In June 2003, the Department received reports that Foster's son had been seen alone along a major highway and had been seen with a drug addict. After Foster failed to attend a meeting with the Department, she agreed to provide information about her residence and to call for an appointment with Alcohol and Drug Services. Foster failed to accomplish these tasks. The Department removed her son from her custody and returned him to foster care. Foster then failed to maintain contact with the Department and later entered a detoxification program, but left the next day. Foster was re-incarcerated in Danville and was scheduled to be released in April 2004.

After his second removal from his mother, Foster's son experienced anxiety, an aversion to being touched, an inability to sleep in the bedroom, and an increased need for privacy. After two weeks, these behaviors disappeared and he adjusted well to his foster home. Dr. Fred Kerman noted that Foster's son exhibited difficulty with "adult detachment" and that permanent stability is critically important to his development.

On June 13, 2003, the Department filed for a Preliminary Removal Order and filed a petition alleging that Foster's son was abused or neglected within the meaning of Code § 16.1-228(1). At the Preliminary Removal Hearing, the court ordered that Foster's son continue in the Department's custody, that Foster submit to mental health assessment and follow treatment recommendations, and that Foster have no contact with her son until further court order.

On August 8, 2003, the Department filed a petition alleging that it was in the child's best interests that Foster's residual parental rights be terminated and requesting that a foster plan with the goal of adoption be approved. The child had been in foster care for 29.5 of the last 31 months and was experiencing difficulty in regard to adult detachment. Foster was diagnosed with "poly-substance dependence." On August 28, 2003, the court terminated Foster's residual parental rights and approved the foster care plan of adoption.

Foster appealed to the circuit court, was incarcerated and did not appear at trial. The Department investigated placement with relatives and determined that placement with relatives was not in the child's best interest because Foster could still interfere in the child's life. The circuit court found by clear and convincing evidence that Foster's residual parental rights should be terminated because Foster had been unable or unwilling to remedy the conditions that led to her son's placement in foster care, and approved the goal of adoption.

Analysis

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence, (1) that the termination is in the best interests of the child, (2) that "reasonable and appropriate" services have been offered to help the parent "substantially remedy the conditions which led to or required continuation of the child's foster care placement," and (3) that, despite these services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care." "[T]ermination of residual parental rights is a grave, drastic, and irreversible action," Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), and we "'presume[] [the trial court has] thoroughly weighed all the evidence [and] considered the statutory requirements,'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

The evidence in this record was sufficient to prove by clear and convincing evidence that termination of Foster's parental rights was in the child's best interests. "It is clearly not in the best interests of a child to spend a lengthy period of time to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The Department proved by clear and convincing evidence that Foster, without good cause, failed "to substantially remedy" the conditions "which led to or required continuation of the child's foster care placement" within a reasonable period of time. The child entered foster care because Foster was unable to parent him and provide him with a clean, safe environment. He had been in foster care for 29.5 months, about half of his life, and within one week of his return to his mother's care, Foster used heroin again. "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted). The record supports the trial court's finding that the Department presented clear and convincing evidence that Foster's parental rights should be terminated pursuant to Code § 16.1-283 and that the termination of Foster's parental rights was in the child's best interests.

Foster argues for the first time on appeal that neither the trial court nor the Department properly considered placing her son with relatives. The record shows that only the child's father raised this issue. Foster argued only that the evidence did not support termination of parental rights. Therefore, Foster did not raise this issue in the trial court and we will not consider it on appeal. See Rule 5A:18.

Accordingly, we summarily affirm the decisions of the trial court. See Rule 5A:27.

Affirmed.