COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Felton and Senior Judge Willis


JENNELLE COPLEY

                                                    MEMORANDUM OPINION[*]
v.         Record No. 2490-04-1                         PER CURIAM
                                                     FEBRUARY 22, 2005
NEWPORT NEWS DEPARTMENT
  OF SOCIAL SERVICES


          FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                         David F. Pugh, Judge

            (Polly Chong, on brief), for appellant.

            (Pamela P. Bates, Assistant City Attorney; Barry G. Logsdon,
            Guardian *ad litem* for the infant children; Mitchell & Logsdon, on
            brief), for appellee.


        Jennelle Copley appeals the decision of the trial court to terminate her parental rights to her

children, pursuant to Code § 16.1-283(C)(2).  Copley contends the evidence was insufficient to

support the trial court's order of termination of her residual parental rights under (1) Code

§ 16.1-283(C)(1) because there was no finding that her failure was without good cause; (2) Code

§ 16.1-283(C)(2) because there was no finding that her failure was without good cause; and

(3) Code § 16.1-283(C)(2) because the Department of Social Services (Department) failed to make

reasonable efforts to assist her in substantially remedying the conditions that resulted in her

children's placement in foster care.  Upon reviewing the record and briefs of the parties, we

conclude this appeal is without merit.  Accordingly, we summarily affirm the decision of the trial

court.  See Rule 5A:27.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We review the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence showed that Copley had two children, K.L.C. and Z.T.C., with whom she was living when the Department received complaints concerning the health and welfare of the children. The Department provided the intensive, in-home services of the Family At Risk program (FAR), starting in March 2002. FAR provided assistance with housekeeping, meal planning, making and getting the children to medical and dental appointments, budgeting, counseling, and role modeling proper methods of socialization and discipline for the children. The FAR worker found the home was dirty, cluttered with clothes and trash, and smelled of urine. The children were poorly or inadequately dressed, dirty from not bathing, and K.L.C.'s teeth were noticeably decayed or "rotten." Z.T.C. was normally found to be alone in Copley's room, in his crib, awake and looking around. Copley resisted FAR's offers of assistance, would not participate in counseling, failed to follow through with medical appointments for the children, continued allowing the children to remain unsupervised, failed to improve their eating and hygiene habits, and failed to clean and empty the home of dirt and clutter.

In September 2002, the children were removed from the home after Child Protective Services received three complaints: that Copley's boyfriend had inappropriately touched K.L.C., that Copley had confined K.L.C. to his room tied by a rope, and that K.L.C. had been left to play outside unsupervised. K.L.C. was six years old at the time he entered foster care. He was diagnosed as suffering from "chronic post traumatic stress disorder" and neglect. Z.T.C. was almost two when placed in foster care. Once in foster care, Z.T.C. was examined and found to be significantly delayed, developmentally and cognitively. Z.T.C. had limited vocabulary, but uttered

the word "shit" whenever frustrated. He could not eat properly or drink from a cup, and he did not know how to play. The therapists determined that the delays were due to environmental factors.

The Department required Copley to do the following, *inter alia*, to have the children return home: maintain a clean home, complete a psychological evaluation and comply with recommendations, complete a parenting capacity evaluation and comply with recommendations, gain and maintain employment for six months, complete parenting classes, participate in individual and family therapy, maintain consistent visitation with the children, refrain from negative outbursts during visitation with the children, and refrain from negative statements and contact with the foster parents. The target date of compliance was September 2003. The Department made referrals to agencies and therapists for counseling and classes, made appointments, secured funding, provided transportation and bus tokens, and arranged visitation.

Although Copley completed the psychological and parenting capacity evaluations, she did not comply with the resulting recommendations for individual therapy. After attending three sessions, Copley began canceling appointments with her individual therapist. Copley would not accept any responsibility for having the children removed from her care. The Department determined that Copley would require long-term therapy and that the children would be at risk if they returned to Copley before she could recognize and accept her role in their removal. Further, Copley was rude and uncooperative with the Department workers. Copley failed to maintain employment. Copley had negative outbursts in front of the children and toward the foster parents. On one occasion she was upset about Z.T.C.'s haircut and told him he looked "like shit. Your hair was the only cute thing about you. . . . [N]ow you look ugly."

ANALYSIS

First, we note that the trial court's order makes no ruling under Code § 16.1-283(C)(1). Therefore, we do not consider the first question presented alleging that the trial court erred by terminating Copley's residual parental rights under that code section.

Next we consider the sufficiency of the evidence to support the finding that, without good cause, Copley failed to substantially remedy the conditions which resulted in the termination of her residual parental rights under Code § 16.1-283(C)(2) and that the Department made reasonable and appropriate efforts to assist her in remedying the conditions. Recognizing that "[t]he termination of residual parental rights is a grave, drastic and irreversible action," Helen W. v. Fairfax County Dep't of Human Devel., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), we, nevertheless, "'presume[] [the trial court has] thoroughly weighed all the evidence [and] considered the statutory requirements.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). Code § 16.1-283(C)(2) provides in pertinent part that a court may terminate the residual parental rights of a parent of a child in foster care upon clear and convincing evidence that it is in the best interest of the child and

> [t]he parent or parents, *without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement*, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior

> efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

(Emphasis added.)

The Department provided intensive, in-home services prior to removing the children. Copley proved to be uncooperative and resisted participating in FAR's suggested services. Once the children were removed, the Department arranged for evaluations, set up appointments with rehabilitative agencies for counseling, provided transportation and bus tokens, and secured financing for services or referred her to agencies she could afford. Copley did not follow through with the recommendations and consistently canceled appointments. "The Department was not required 'to force its services upon an unwilling or uninterested parent.'" Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243, 288 S.E.2d 410, 415 (1982). The Department provided the opportunities, but Copley failed to take advantage of what the rehabilitative agencies offered. Therefore, the record established that the Department and the agencies made reasonable and appropriate efforts in assisting Copley in remedying the conditions that resulted in removal of her children.

Additionally, the Department showed by clear and convincing evidence that after six months of intensive, in-home services and a year and a half of foster care placement, Copley was unwilling or unable to substantially remedy the conditions that led to and required her children's foster care placement. Though Copley was able to comply in part, she did not substantially rectify the problems. Copley neither completed all the ordered services nor stabilized her living environment. Nor has Copley been able to recognize her role in the removal of her children. She continued to have negative outbursts during visitation, which visibly upset her children. The record is replete with examples of her uncooperative, hostile, and unwilling attitude toward compliance and rehabilitation. Therefore, the trial court had sufficient evidence that her failure to remedy the conditions was without good cause.

Although there was some conflict in the descriptions of Copley's home and its condition, and her attitude toward her children, the evidence was clear that without good cause, Copley failed to substantially remedy the conditions that resulted in the children's removal. She did not cooperate with the Department, she would not follow through with appointments and individual therapy, she did not behave appropriately during visitations, she failed to maintain employment, and she did not accept responsibility for her role in the children's removal. "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted). The record supports the trial court's finding that the Department presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(2) and establishing that termination of Copley's parental rights was in the children's best interests.

Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

Affirmed.