COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Humphreys and Senior Judge Overton

CLINTON QUESENBERRY

MEMORANDUM OPINION*

v.        Record No. 2637-04-2                    PER CURIAM
                                                  APRIL 12, 2005

RICHMOND DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

(Richard G. White, Jr., on brief), for appellant.

(Sarah M. Denham, Assistant City Attorney; Herbert H. Jones,
Guardian *ad litem* for the infant child, on brief), for appellee.


Clinton Quesenberry appeals the trial judge's decision terminating his residual parental

rights to his son, born January 6, 2000.  He contends the evidence was insufficient to support this

decision because the Richmond Department of Social Services failed to make reasonable efforts to

assist him in obtaining services and referrals during his incarceration and inadequately investigated

placement with relatives as an alternative to termination of his parental rights.  Upon reviewing the

record and briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we

summarily affirm the decision of the trial court.  See Rule 5A:27.

Background

We view the evidence in the light most favorable to the prevailing party below, and we grant

to that evidence all reasonable inferences therefrom.  See Logan v. Fairfax County Dep't of Human

Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence established that

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the child was placed into the custody of the Department two days shy of his second birthday, based on an emergency removal order. His mother was hospitalized for her mental illness, and Quesenberry's whereabouts were unknown.

Two weeks after the Department obtained custody, Jamie Gray, a foster care worker, spoke with Quesenberry. Following that contact, an initial foster care plan was prepared with the goal of placing the child with a relative. The relative under consideration was Quesenberry. As part of the plan, Quesenberry was asked to complete sixteen parenting group sessions, obtain and maintain appropriate housing and employment, obtain a substance abuse assessment and any necessary treatment, provide names of relatives to and cooperate with the Department, sign necessary releases for the Department, and be responsible for child support and provide income verification. To assist Quesenberry with meeting these requirements, Gray referred him to service providers in Richmond and Dublin, where Quesenberry was residing and where the initial foster care plan had been approved. Quesenberry failed to complete any of these requirements, and he attended only one of five scheduled visits with the child between January and April of 2002.

In April 2002, Quesenberry was convicted of possession of a firearm by a convicted felon and was incarcerated from April 2002 until January 2004. Although services were available in the facility where Quesenberry was incarcerated, he completed only one substance abuse group and a class entitled "productive citizenship," a service not required by the foster care plan. The record also indicates he contacted the child's mother the day before trial and asked where he could buy marijuana.

During Quesenberry's incarceration, the Department changed the foster care plan to include a primary goal of return home, with a concurrent goal of adoption. The Juvenile and Domestic Relations District Court for the City of Richmond approved that plan. Gray sent numerous letters to Quesenberry while he was incarcerated. The letters advised Quesenberry to obtain the mandated

services listed in the initial foster care plan and advised him that he could complete the requirements in Richmond or Pulaski upon his release from incarceration. Quesenberry did not respond to these letters. Gray sent another letter advising Quesenberry to contact her upon his release regarding the plan for the child's adoption. Two weeks after his release, Quesenberry contacted Gray and inquired about services and visitation. The Department scheduled two visitations, but Quesenberry failed to appear for either visitation.

On May 11, 2004, the juvenile district court terminated Quesenberry's parental rights. Although notified of the hearing, Quesenberry failed to appear. Quesenberry appealed to the circuit court. In June 2004, Gray sent Quesenberry another letter reiterating the services that he needed to complete and included names and telephone numbers of six different resources in Pulaski County where he was living. Gray specifically recommended that he participate in a STEP parenting program and an educational workshop about children with special needs. In her letter, Gray also informed Quesenberry that she was leaving the Department and that her supervisor, Cheryl Williams, would assist him until a new social worker was assigned to the case.

During the time Gray handled the case, she explored whether there were relatives who could assume the care of the child. Quesenberry's mother said she could not care for the child but suggested that Gray contact Quesenberry's aunt. When initially contacted, Quesenberry's aunt said she was not interested. Later, Quesenberry told Gray that his aunt had changed her mind. When Gray again contacted Quesenberry's aunt, she was ambivalent about assuming responsibility for the child. Nevertheless, Gray continued investigating her as a potential relative placement and conducted a home study. The home study revealed that she is elderly and relies upon her sister and brother-in-law for transportation and that her brother-in-law is listed in the sexual abuse registry. Following the home study, the Department did not approve her as a potential relative placement.

On July 29, 2004, Quesenberry telephoned Williams and told her he was unaware of what services he needed to complete in order to be reunited with the child. Williams sent him a letter reiterating all the information that Gray had sent him in previous letters and the name and telephone number of the new social worker assigned to his case. As of the circuit court trial date, Quesenberry had not contacted the social worker.

At trial, Quesenberry denied receiving any letters from Gray, but acknowledged receiving a letter from Williams. Quesenberry testified he telephoned Gray and his last social worker several times but his calls were not returned. He said he would visit the child as often as allowed if he could get transportation.

Analysis

When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Code § 16.1-283(C)(1) provides in pertinent part that residual parental rights may be terminated if the court finds by clear and convincing evidence that termination is in the child's best interest and that the parent has failed, without good cause, to maintain continuing contact with the child and to provide for or substantially plan for the child within six months of the child's placement in foster care, notwithstanding efforts by agencies to communicate with the parent and to strengthen the parent-child bond. Code § 16.1-283(C)(2) requires proof by clear and convincing evidence that (1) termination is in the best interests of the child, (2) "reasonable and appropriate" services have

- 4 -

been offered to help the parent "substantially remedy the conditions which led to or required continuation of the child's foster care placement," and (3), despite those services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care."

The evidence supports the trial judge's findings. Quesenberry failed to maintain contact with the child or provide for his future, and failed to demonstrate a willingness or ability to alter the circumstances that necessitated the child's continued foster placement. The child has been in foster care more than half of his life. Although Quesenberry claims otherwise, the record proved that the Department offered him reasonable and appropriate services and that Quesenberry has failed to use those services. The Department was not required "to force its services upon an unwilling or uninterested parent." Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243, 288 S.E.2d 410, 415 (1982). Without good cause, Quesenberry has been unable or unwilling, within the thirty months since the child was placed in foster care prior to trial, to remedy substantially the conditions which led to or required continuation of foster care placement, notwithstanding the reasonable and appropriate efforts of the Department. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). In addition, the record established that the Department investigated placing the child with relatives and found that either the relatives would not accept responsibility for the child or could not provide a suitable home environment.

The record supports the trial judge's finding that the Department presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(1) and

16.1-283(C)(2) and establishing that termination of Quesenberry's residual parental rights is in the child's best interest.  Accordingly, we summarily affirm the decision.  <u>See</u> Rule 5A:27.

<u>Affirmed.</u>