COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Huff and Senior Judge Clements


BRANDY NICOLE BEARD

                                                        MEMORANDUM OPINION*
v.       Record No. 2529-11-2                                PER CURIAM
                                                          AUGUST 7, 2012
HALIFAX COUNTY DEPARTMENT
  OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF HALIFAX COUNTY
                      Joel C. Cunningham, Judge

         (Brendan U. Dunning; Law Office of Brendan U. Dunning, P.C., on
         brief), for appellant.

         (Carol B. Gravitt; Gravitt & Gravitt, P.C., on brief), for appellee.

         (Tracy L. Quackenbush; Law Office of Tracy L. Quackenbush,
         PLC, on brief), Guardian *ad litem* for the infant children.


        Brandy Nicole Beard appeals the termination of her parental rights to her five children

pursuant to Code § 16.1-283(C)(2).  Beard argues the trial court erred in terminating her parental

rights to her children based upon her allowing contact between the children and Michael

Radosinovich.  She also argues she availed herself to services offered by Halifax County

Department of Social Services (DSS) and she had not abused her children, but was concerned for

their wellbeing.  Upon reviewing the record and briefs of the parties, we conclude this appeal is

without merit.  Accordingly, we summarily affirm the decision of the circuit court.  See

Rule 5A:27.

        We view the evidence in the light most favorable to the prevailing party below and grant to

it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax Cnty. Dep't of Human

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence proved that the three oldest of Beard's five children, N., M., and C., were removed from Beard's care on April 23, 2007 due to sexual abuse of N. by Radosinovich, the father of M. and C.[1] On May 30, 2007 and June 27, 2007, the Halifax County Juvenile and Domestic Relations District Court adjudicated that N. was sexually abused and found that M. and C. were at risk for abuse.

N., M., and C. were placed with their maternal grandmother in another state. On February 11, 2008, at the grandmother's request, N., M., and C. returned to Virginia and were placed in foster homes. Beard completed services, including parenting classes, mental health evaluation and counseling, and education on sexual abuse, sexual abusers, and sexual victims. On November 5, 2008, Beard regained custody of N., M., and C. The orders returning custody to Beard prohibited contact between the children and Radosinovich.

On October 26, 2007 and July 21, 2009, appellant gave birth to B. and I., and it was later determined that Radosinovich was their father. The younger child was conceived after Radosinovich was adjudicated as having sexually abused N., while court orders prohibited contact between the children and Radosinovich, after Beard completed sexual abuse counseling where she expressed one hundred percent belief that Radosinovich sexually abused her children, and after Beard disavowed any contact with Radosinovich.

In the spring of 2009, Radosinovich was seen at the children's residence. DSS moved to amend the child protective order for N. and the permanency planning orders for M. and C. to prohibit Radosinovich from entering the property where the children resided even when the children were not present. Beard attended the hearings on the motions and was present when the orders were made final.

---

[1] N.'s first report of sexual abuse occurred when he was four years old. When N. was seven years old, he reported that Radosinovich sexually abused N. and C. N. was eleven years old and C. was six years old at the time of the termination hearing.

In September 2010, the school behavior of M. and C. deteriorated. On September 30, 2010, a social worker found Radosinovich hiding in a bed in Beard's residence while the youngest child was home. According to Beard's friend who lived in Beard's residence for a number of days, Radosinovich had been staying in Beard's residence, he had been left alone with the children, and he had bathed two of the boys. Beard permitted Radosinovich to sleep in her bed while I. was in the bed. All five children were removed from Beard's residence. Beard was convicted of violating the protective order prohibiting Radosinovich's contact with and presence in the residence of the children.

After the initial removal of N., M., and C. from Beard's residence in 2007, Dr. James Anderson, a clinical psychologist, evaluated Beard. Dr. Anderson found that Beard had a personality disorder with narcissistic tendencies, which gave her a guarded prognosis. Dr. Anderson found that Beard focused on her own needs and feelings and she tended to rely on others for attention and affection, which made it difficult for her to make appropriate decisions about relationships. Based upon Dr. Anderson's recommendations, Beard attended sexual victim/offender education. Beard received individual counseling sessions with a mental health therapist and certified sex offender treatment provider. Beard learned the behaviors frequently found in sexual abuse victims and that her children displayed all of the behaviors. At the termination hearing, when asked about the risk that Beard would be unsuccessful at protecting her children from a known sexual abuser, Dr. Anderson testified the "best predictor of behavior is relevant past behavior, I would have a lot or concerns about the risk in this case." Dr. Anderson testified he could not suggest any additional services.

In addition to sexual abuse education and individual counseling, Beard was provided with domestic violence counseling, in-home counseling for the family, individual counseling for some of the children, school services for the children, daycare, payment of utility bills, infant and toddler

services, Healthy Family services, immunizations, Medicaid, WIC, TANF, food stamps, and transportation. After custody was returned to Beard in 2008, she did not complete the financial intake for infant and toddler services, she canceled or failed to make appointments for Medicaid and for immunizations for the children, and she missed appointments for mental health counseling, TANF, daycare, food stamps, WIC, and school services.

At the termination hearing, DSS presented extensive evidence of the children's behaviors, which were consistent with behaviors of sexual abuse victims and attachment disorder. While in foster care, the children receive mental health services and medical services and have made progress.

Beard testified she married Michael Poling on July 25, 2011. Beard testified Radosinovich told her that he did not sexually abuse the children and she believed him. Beard testified her opinion changed and she now believed that Radosinovich should not be around the children. Beard agreed that the children exhibited signs of being sexual abuse victims prior to her allowing Radosinovich back into her residence. Beard agreed that she conceived I. after the court entered the order barring contact between Radosinovich and the children. Beard admitted she permitted Radosinovich in her house after the court entered the order barring him from the house even when the children were not present. On cross-examination, Beard testified she was not positive Radosinovich sexually abused the children.

In terminating Beard's parental rights, the trial court found that Radosinovich sexually abused N. and C. The trial court found that after entry of the order prohibiting Radosinovich in the residence where the children lived, Beard allowed Radosinovich in the residence and permitted him to sleep in her bed with I. The trial court found that the children were traumatized from the sexual abuse by Radosinovich, they showed clear signs of sexual abuse, and they require and will continue to require special attention and counseling. The trial court found that although Beard may love her

children, she was more concerned about herself and she failed to protect her children, she failed to make applications for services, she failed to use DSS services, daycare, TANF, and WIC, and she failed to make sure the children received the required immunizations. The trial court found that the children have made progress, but it has been a slow and fragile progress, and it was in the best interests of the children to terminate Beard's parental rights.

Code § 16.1-283(C)(2) provides that the residual parental rights of a parent of a child found by the court to be neglected or abused and placed in foster care may be terminated if clear and convincing evidence proves that it is in the best interests of the child and that:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

"[S]subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005).

The trial judge's findings, "'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d

232, 237 (1988)). It is well settled that "[w]hen addressing matters concerning a child . . . the paramount consideration of a trial court is the child's best interests." Id.

Uncontroverted evidence showed that despite sexual abuse counseling where Beard learned the signs of sexual abuse, Beard continued to allow Radosinovich to interact with the children, she failed to protect her children from him, and she continued to have a sexual relationship with him. Despite a court order prohibiting Radosinovich from being in the residence, Beard permitted Radosinovich to sleep at the residence, left him alone with the children, permitted him to bathe children he had sexually abused, and permitted him to sleep in the same bed with I.

DSS provided sexual abuse counseling and mental health counseling and offered several services for assistance with food, medical care, and daycare for the children, but Beard failed to follow through with the offered services. According to Dr. Anderson, Beard has a personality disorder with narcissistic tendencies, which gives her a guarded prognosis. Dr. Anderson found that Beard focuses on her own needs and feelings and she tends to rely on others for attention and affection, which makes it difficult for her to make appropriate decisions about relationships. After Beard attended the treatment recommended by Dr. Anderson, Beard continued to permit Radosinovich to be with the children and she failed to protect the children. Dr. Anderson could not recommend any additional treatments for Beard. Although at the time of the termination hearing Beard was married and testified Radosinovich was no longer in her life, she permitted Radosinovich to remain or to re-enter the lives of her children after a report of sexual abuse and, after she received sexual abuse counseling, she permitted him in the residence despite a court order barring him, and she permitted him to be alone with the children. "'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

DSS provided numerous services to Beard and Beard did participate in the services, but after the children were returned to her in 2008, she did not complete the financial intake for infant and toddler services, she canceled or failed to make appointments for Medicaid and for immunizations for the children, and she did not follow through or missed appointments for mental health counseling, for medications for the children, for TANF, for daycare, for food stamps, for WIC, and for school services.  "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities."  Kaywood v. Halifax County Dep't of Soc. Serv., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

DSS presented clear and convincing evidence to support the termination of Beard's parental rights pursuant to Code § 16.1-283(C)(2), and the trial court did not err in doing so.

Affirmed.